MOORMAN MANUFACTURING COMPANY, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.*

*September 17—October 13, 1942.*

* Motion for rehearing denied, with $25 costs, on January 12, 1943.

201

For the appellant there were briefs by *Roberts, Roe & Boardman* of Madison, and *Wilson & Schmiedeskamp* of Quincy, Illinois, and oral argument by *W. Wade Boardman* and *George Henry Wilson.*

*Stanley Rector* and *Arthur Barber,* both of Madison, for the respondent Industrial Commission.

Briefs *amici curiæ* were filed by *Rieser & Mathys* of Madison, and by *Stroud, Stebbins & Wingert* of Madison.

FOWLER, J.   Elliott was a salesman of the plaintiff's stock food under a written contract designated a "Dealer's Contract" in force when he filed a claim for unemployment compensation with the Industrial Commission which administers the Unemployment Compensation Act, hereinafter referred to as "the act."   The contract ran for a six months' period. He had been selling plaintiff's goods under such a contract or a similar one from April, 1937, to February, 1939, when hearing was had before the appeal tribunal.   Under the contract referred to, the claimant had specific territory in which he might sell.   He used his own automobile, worked when and as and where he pleased, and paid his own expenses.   His work was soliciting orders and he was paid a commission on his sales.

The company claimed that the claimant was not its employee, but a common-law independent contractor and as such not entitled to compensation under the act.   A deputy of the commission held the claimant an employee and allowed compensation.   This was confirmed by the appeal tribunal, by the commission, and by the court.

To help us decide this apparently simple question we are deluged with briefs of one hundred five pages by counsel for

the Industrial Commission, seventy-nine pages of briefs of counsel for the company, and by two briefs by counsel *amici curiæ,* aggregating one hundred twenty-seven pages, not including twenty-five pages of synopses or appendices. We are also cited in the several briefs to two hundred eleven adjudicated cases, including duplicates, and to an aggregate of thirty-three in a memorandum by the Industrial Commission, and an opinion of the circuit judge. Such a mass is not helpful, and we take up consideration of the case by studying the act to the end of discovering whether it covers the claimant. So considering the question it seems to us not difficult of solution.

We shall assume that under the facts Elliott was a common-law independent contractor. But this does not necessarily bar him from being an employee under the act. His status under the act must be determined from the act itself in view of the purpose of the act as declared therein. We consider that so construing the act Elliott was an employee.

One phase of the act was considered in *Wisconsin B. & I. Co. v. Industrial Comm.* 233 Wis. 467, 290 N. W. 199. The act at the time there and here involved was as contained in ch. 108, Stats. 1937, and all citations herein are to those statutes. The former case did not involve the question whether the claimant for compensation was an employee. He unquestionably was. The point considered was whether one Drews, the person who hired the claimant and paid him was an employee of the principal contractor from whom compensation was sought and thus an agent of the principal contractor in hiring the claimant for it, or a subcontractor of the principal contractor. We held that under the undisputed evidence Drews was a subcontractor and the claimant was his employee and not the employee of the principal contractor, and the claimant must look to the fund paid in by his employer for his compensation rather than from the fund paid in by the principal contractor.

The main consideration in so deciding is stated on page 478 of our opinion:

"The legislature had no difficulty in saying when sec. 108.02 (c) of the Unemployment Compensation Act was first enacted by ch. 20, Laws of Sp. Sess. 1931–1932, that employees of subcontractors were under the act employees of the principal contractor. That provision was taken out by sec. 1, ch. 383, Laws of 1933, see sec. 108.02 (c), Stats. 1933, and it has never been put back by any language of any later statute. If the legislature had intended to put back that provision, the way to do it manifestly was to say so, and presumably they would have so said had they so intended."

We applied the common-law tests used in determining Drews' status as an employee or independent contractor as those tests are employed in fixing status as a servant under the common law of master and servant and in determining status as an employee under the Workmen's Compensation Act. In determining Drews' status as a subcontractor this was correct whether it would be correct in determining that of a claimant or not, and we declined to consider in that case whether the claimant was an independent contractor at common law and as such deprived of status as an employee under the act, and left that question for decision when a case should be reached involving it. Page 481 of the opinion. Such case is now before us.

We stated above that in construing the act its purpose must be considered. Its purpose plainly appears in sec. 108.01 (1), Stats., set out in the margin.[1] That purpose was to relieve

---

[1] Sec. 108.01 (1) Unemployment in Wisconsin has become an urgent public problem, gravely affecting the health, morals and welfare of the people of this state. The burden of irregular employment now falls directly and with crushing force on the unemployed worker and his family, and results also in an excessive drain on agencies for private charity and for public relief. The decreased and irregular purchasing power of wage earners in turn vitally affects the livelihood of farmers, merchants and manufacturers, results in a decreased demand for their products, and thus tends partially to paralyze the economic life of the entire state. In good times and in bad times un-

"unemployed workers" and "wage earners." The subsection shows that the act contemplates compensation for loss of earnings by workers. This must be given great—even controlling—effect, in determining who are employees under the act as it is the employees who are to receive the compensation provided for, and giving the declaration of the subsection due consideration we cannot avoid the conclusion that Elliott was an employee of the defendant when he applied for compensation. That he was paid by a commission on his sales instead of receiving a daily, weekly, or monthly wage has no more weight in fixing his status than that an industrial worker is paid by the piece affects his status as an employee. To relieve the needs of such a worker because of loss of earnings is as much within the purview of the act and the public welfare is as much enhanced by relieving him from the effects of loss of employment as by relieving any other worker. This seems to us all that it is necessary to say to establish the claimant's status as an employee entitling him to compensation under the act if his loss of earnings constitutes unemployment under the terms of the act. Of course, to have an employee status a claimant for compensation must meet the tests fixed by the act to determine that status but the claimant appears to us to meet those tests. By sec. 108.02 (5) (a), Stats., one is presumed to be an employee unless and until the employer has satisfied the commission of three things: (1) That he is free from the company's control or direction over the performance of his contract of service; (2) that his work was performed outside the company's place of business; and (3) that he was "customarily engaged in an independently established trade or

employment is a heavy social cost, now paid mainly by wage earners. Industrial and business units in Wisconsin should pay at least a part of this social cost, caused by their own irregular operations. To assure somewhat steadier work and wages to its own employees, a company can reasonably be required to build up a limited reserve for unemployment, and out of this to pay unemployment benefits to its workers, based on their wages and lengths of service.

business." It seems quite clear that the instant claimant was not "customarily engaged in an independent trade or business." This clause contemplates the case of a tinsmith by trade whom the company might call in to repair the gutters on one of its buildings, or a painter it might call to paint it, and like cases. The commission therefore could not be satisfied—and they were not satisfied—that Elliott was customarily engaged in an independent trade or business, and they must by that fact alone, perforce of the section, which is set out in the margin,[1] determine him to be an employee of the company for which he was working.

An employee to be entitled to compensation must, of course, as above indicated, fall within the terms of the act. The act obviously covers those employees rendering personal service who do not receive wages. Elliott's service is not among those services excluded by the act, sec. 108.02 (5) (g), Stats. His compensation was "wages" within sec. 108.02 (6). By sec. 108.02 (17) an employee shall be deemed totally unemployed in any week for which he received no wages. By sec. 108.04 (1) benefits shall be paid to each unemployed and eligible employee. By sec. 108.04 (3) an employee is eligible

---

[1] Sec. 108.02 (5) (a) "Employment," subject to the other provisions of this subsection, means any service performed by an individual for pay, including service in interstate commerce, under any contract of service for pay or contract of hire, written or oral, express or implied, whether such individual's contract was directly made with and paid by the employer or through a person in his employ, provided the employer had actual or constructive knowledge of such contract; and each individual thus engaged by any employer to perform services for pay shall for the purposes of this chapter be treated as in an "employment," unless and until the employer has satisfied the commission that such individual has been and will continue to be free from the employer's control or direction over the performance of his work both under his contract of service and in fact, and that such work is either outside the usual course of the employer's enterprise or performed outside of all the employer's places of business, and that such individual is customarily engaged in an independently established trade, business, profession or occupation.

to receive total employment benefits after a waiting period of three weeks of total unemployment. These requirements were all met by Elliott. He was not barred by any of the matters designated in sub. (4), (5), or (6) of sec. 108.04. His contract for service had not expired by its terms, and his service had not been terminated by cancellation of it for incompetence, nonperformance, or insufficient performance of duty. We are therefore of opinion that Elliott was covered by the act.

We do not perceive that it matters how courts of other states have construed their unemployment acts even though they are duplicates of or based upon our own. It is for us to construe our own act as to us seems to meet its purpose and intent, taking care of course to give to each specific provision its especial force. We shall therefore not cite any decisions of other states, but will merely state that some decisions have considered workers not employees who under their contracts or methods of work were independent contractors under common-law concepts and others have included them. We believe we have sufficiently indicated the basis of our construction. Probably the great length counsel have gone in this case to support their respective contentions is due to our not especially distinguishing in the *Wisconsin B. & I. Co. Case, supra,* the situation of the subcontractor from that of a claimant. The reasons stated in the opinion in that case upon which we based the status of Drews as a subcontractor and not an employee of the principal contractor speak for themselves. We adhere to them and we offer no apology for them. We stated that the definitions of the act were prescribed to fix the status of claimants for unemployment compensation, and as Drew was not a claimant, they did not apply to him. We held that Drews' status was to be determined by common-law tests, not that the status of claimants was to be so determined. It is perhaps unfortunate that we did not use language expressly disavowing intent to indicate that in de-

termining whether a claimant is an employee he should not be so considered if under the common-law concepts he was an independent contractor.

This we consider is enough to say in explanation or justification of our instant decision. We deem it proper, however, to mention and note our disagreement with a suggestion made by counsel for the commission that amendments of the act made by the legislatures of 1939 and 1941 show the interpretation that should be given to the 1937 act. Legislatures by a later act cannot establish or affect the construction of a former act. *Northern Trust Co. v. Snyder,* 113 Wis. 516, 530, 89 N. W. 460.

We are also moved to comment on the fact that counsel for the commission insert in their brief statements of an advisory committee created by the legislature as to what they meant by certain amendments of the original act which they drafted by the definition of "employment" in those amendments. What the framer of an act meant by the language used cannot be shown by testimony. *Northern Trust Co. Case, supra; Casper v. Kalt-Zimmers Mfg. Co.* 159 Wis. 517, 520, 149 N. W. 754, 150 N. W. 1101; *Robinson v. Krenn,* 236 Wis. 21, 294 N. W. 40. Much less can it be shown by mere statements by the framer or anyone else. The meaning of a legislative act must be determined from what it says—not by what the framer of the act intended to say or what he thought he was saying. The question always is what did the legislature mean, not what the framer meant, and that meaning must be drawn from the language used in the act in view of the purpose of the legislature as expressed in its act or facts of which the court can take judicial notice.

*By the Court.*—The judgment of the circuit court is affirmed, with costs to the respondents, but taxation of costs for respondents' brief will be limited to fifty pages under Rule 10.