WISCONSIN CHEESE SERVICE, INC., Plaintiff-Appellant,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and the Labor & Industry Review Commission, Defendants-Respondents.†

Court of Appeals

*No. 81–1444. Submitted on briefs April 8, 1982.—*
*Decided June 14, 1982.*
(Also reported in 322 N.W.2d 495.)

† Petition to review pending.

For the plaintiff-appellant the cause was submitted on the briefs of *Jon P. Axelrod* and *Douglas L. Flygt* and *DeWitt, Sundby, Huggett & Schumacher, S.C.* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Peter W. Zeeh* of Madison.

Before Bablitch, J., Dykman, J. and Cane, J.

DYKMAN, J.   The issue on appeal is whether truck owner-operators who delivered Wisconsin Cheese's goods are its employees for the purpose of unemployment compensation tax contributions. The Department of Industry, Labor, and Human Relations (DILHR) determined that the owner-operators are Wisconsin Cheese's employees. That determination was reviewed by an appeal tribunal and upheld by the Labor and Industry Review Commission and by the circuit court. We conclude that

it is supported by the record and therefore affirm the *circuit court's judgment.*

Wisconsin Cheese leases trucks from owner-operators in order to deliver its goods to various locations. The leases are for yearly intervals (permanent lease) or for the purpose of making a single trip (trip lease). The owner-operators drive the trucks or hire a driver, and are paid a percentage of the revenue collected by Wisconsin Cheese for the trip. Some owner-operators are incorporated and some own more than one truck.

DILHR informed Wisconsin Cheese that it had under-reported its gross wages paid in 1975, 1976, and 1977 by omitting wages paid to owner-operators.

The evidence at the appeal tribunal hearing established that operating authority from the Interstate Commerce Commission (ICC) is required in order to transport Wisconsin Cheese's goods. The operating authority is held by Wisconsin Cheese. The owner-operators have no authority of their own. There is some dispute as to whether owner-operators must obtain Wisconsin Cheese's permission to haul goods on their return trips to Wisconsin. Unless the goods hauled back to Wisconsin constitute an exempt commodity, however, the owner-operators carry them on Wisconsin Cheese's operating authority. The revenue for the return trip is paid to Wisconsin Cheese, which keeps a portion of it.

Owner-operators pay for their truck maintenance and gasoline, as well as housing and meal expenses. Wisconsin Cheese provides public liability and cargo insurance, while the owner-operators provide collision insurance. Owner-operators are free to pick their own routes of travel. They also may refuse to carry any load.

The appeal tribunal determined that owner-operators are employees of Wisconsin Cheese as that term is used in the unemployment compensation statutes. It also determined that Wisconsin Cheese had induced owner-

operators to incorporate in order to avoid unemployment compensation coverage, and that their corporate status should therefore be disregarded in determining whether they are employees. The Labor and Industry Review Commission affirmed the decision of the appeal tribunal. The circuit court affirmed the commission's decision.

On appeal, Wisconsin Cheese argues that the evidence presented to the appeal tribunal established that owner-operators are independent contractors rather than employees. It also contends that the appeal tribunal improperly disregarded the corporate status of incorporated owner-operators.

We review the decision of the Labor and Industry Review Commission with no special deference to the circuit court's decision. *Stafford Trucking, Inc. v. ILHR Dept.*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). We must accept the appeal tribunal's findings as affirmed by the commission if they are supported by credible and substantial evidence. Secs. 108.09(7)(b) and 102.23(6), Stats. The application of the findings to the unemployment compensation statutes is a question of law and the conclusions reached by the appeal tribunal are not binding on this court. *Stafford Trucking*, 102 Wis. 2d at 261, 306 N.W.2d at 82–83. If the statutes are subject to two or more equally reasonable interpretations, however, this court will defer to the interpretation adopted by the agency charged with administering the statute.[1] *Environmental Decade v. ILHR Dept.*, 104 Wis. 2d 640, 644, 312 N.W.2d 749, 751 (1981); *Stafford Trucking*, 102 Wis. 2d at 261, 306 N.W.2d at 83.

[1] The parties disagree whether the statutory construction advanced by DILHR is a longstanding one, and therefore disagree whether DILHR's construction is entitled to increased weight. Because we hold that DILHR's construction is reasonable and consistent with the statutes' purpose and with precedent, we deem it correct without deciding whether it is of long standing.

"Employee" is defined for the purpose of unemployment compensation in sec. 108.02(3), Stats.:

(a) "Employe" means any individual who is or has been performing services for an employing unit, in an employment, whether or not the individual is paid directly by such employing unit; except as provided in par. (b) or (e).

(b) Paragraph (a) shall not apply to an individual performing services for an employing unit if the employing unit satisfies the department as to both the following conditions:

1. That such individual has been and will continue to be free from the employing unit's control or direction over the performance of his services both under his contract and in fact; and

2. That such services have been performed in an independently established trade, business or profession in which the individual is customarily engaged.

The statute creates a two-step process for determining whether an individual is an employee. The first step is to decide whether the individual is performing services for an employing unit in an employment. If that test is met, the question becomes whether the individual is exempt as an independent contractor under par. (b). *Transport Oil, Inc. v. Cummings,* 54 Wis. 2d 256, 262, 195 N.W.2d 649, 652 (1972). Both parts of par. (b) must be satisfied before the individual is entitled to an exemption. *Sears, Roebuck & Co. v. ILHR Dept.,* 90 Wis. 2d 736, 743, 280 N.W.2d 240, 243 (1979).

Wisconsin Cheese concedes that owner-operators perform services for an employing unit in an employment. The question thus is whether it satisfies both parts of the test established by sec. 108.02(3)(b), Stats.

The appeal tribunal found that owner-operators are not free from Wisconsin Cheese's direction and control and are therefore not independent contractors.[2] It stated

---

[2] The tribunal also found that the owner-operators are not engaged in an independently established trade, business or pro-

that the amount of direction and control which Wisconsin Cheese had in fact exercised may have been minimal, but that the authority to control and direct the service to be performed was expressly reserved to Wisconsin Cheese by the terms of the leases.

The finding that the leases reserve control to Wisconsin Cheese is supported by the language of the leases. A permanent lease introduced into evidence contains the following provisions:

2. The above described equipment will be used by the LESSEE in the transportation of legally permitted properties or commodities and that such equipment will be under the exclusive possession, control, direction and use of the LESSEE and that, the LESSEE shall be responsible to all State and Federal regulatory Agencies as may be required by acts of Congress or Legislative bodies and/or regulatory bodies. "Notwithstanding any provision herein which might be construed otherwise, the lessee shall have the exclusive possession, control and use of the said equipment, and shall assume full and complete responsibility to the public, the shippers and to all state and federal regulatory bodies or authorities having jurisdiction during the entire period of the lease."
. . . .

5. THE LESSOR HEREBY COVENANTS AND AGREES:

. . . .
(d) That for the duration of this lease, the lessee shall have exclusive possession, direction and control of said equipment, and that said equipment shall at all times be operated by an authorized and qualified driver, approved by the LESSEE.

There is little question that these provisions grant Wisconsin Cheese the right of direction and control over the manner in which owner-operators perform their services.

---

fession, and thus fail the second requirement of par. (b). Because the owner-operators must satisfy both paragraphs before they are entitled to an exemption, and because we hold that they do not satisfy par. (a), we need not decide whether they satisfy par. (b).

Wisconsin Cheese contends that this court should ignore the lease language and decide based upon the degree of control actually exercised over the owner-operators. It points out that the lease provisions granting it exclusive direction and control over the operating equipment are required by the ICC and have no relationship to how it actually conducts its business.[3] It asserts that the purpose of the ICC requirement is only to protect the public by controlling liability in negligence cases and that it has no application to unemployment compensation determinations.

We rejected a similar argument in *Stafford Trucking*. In that case, Stafford Trucking argued that similar lease language was not controlling because it was required by the Public Service Commission. We determined that the word "control" in sec. 108.02(3)(b), Stats., refers to the " 'power or authority to guide or manage.' " *Stafford Trucking,* 102 Wis. 2d at 262, 306 N.W.2d at 83 (citation omitted). Section 108.02(3)(b)1 defines an independent contractor as one who is free from his employer's direction or control "both *under his contract* and in fact" (emphasis supplied). We held that this "clear and unambiguous" language renders "unpersuasive" the argument that a governmentally required power to control should not be considered for the purpose of unemployment compensation coverage. *Stafford Trucking,* 102 Wis. 2d at 265, 306 N.W.2d at 85. The power or authority to control or direct the performance of services that the lease conveys is not diminished by the circumstances of its origin.

Wisconsin Cheese attempts to distinguish *Stafford Trucking* on the ground that the employer in that case

---

[3] 49 C.F.R. sec. 1057.12(d)(1) (1981) provides:

The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

exercised actual control over the performance of services. That fact was not essential to our holding. We specifically held it to be "immaterial whether the right or power to control is in fact exercised as long as the right to exercise such control exists." *Id.* at 263, 306 N.W.2d at 83. That conclusion is compelled by the clear language of the statute.

This construction is consistent with the purpose of the unemployment compensation statutes. "The fundamental objective of unemployment compensation is to mitigate economic loss to the worker and his family." *Price County Telephone Co. v. Lord,* 47 Wis. 2d 704, 719, 177 N.W.2d 904, 911–12 (1970) (footnote omitted). The failure to mitigate such a loss "tends partially to paralyze the economic life of the entire state." Sec. 108.01(1), Stats. In order to foster a reduction of both the individual and social consequences of unemployment, courts have construed the statutes broadly. *Stafford Trucking,* 102 Wis. 2d at 261, 306 N.W.2d at 83. *Cf. Moorman Mfg. Co. v. Industrial Comm.,* 241 Wis. 200, 205, 5 N.W.2d 743, 745 (1942) (relieving employee who is paid on commission from effects of unemployment enhances the public welfare as much as does relieving any other worker).

Wisconsin Cheese points to a treasury regulation, a revenue ruling, and several federal and state cases in support of the proposition that lease language establishing direction and control required by a governmental entity should be ignored for unemployment compensation purposes unless control is actually exercised. The supreme court has noted that decisions from other jurisdictions are of little use in construing Wisconsin's unemployment compensation statutes.

We do not perceive that it matters how courts of other states have construed their unemployment acts even though they are duplicates of or based upon our own.

It is for us to construe our own act as to us seems to meet its purpose and intent, taking care of course to give to each specific provision its especial force.

*Moorman Mfg.*, 241 Wis. at 207, 5 N.W.2d at 746. We note additionally that the authorities cited by Wisconsin Cheese are not on point.[4] We therefore decline to depart

---

[4] Wisconsin Cheese relies on Rev. Rul. 76–226, 1976–1 C.B. 322, which ruled that owner-operators are not employees within the meaning of the Federal Unemployment Tax unless the lessee exercised actual control over their performance of services beyond that which was required by governmental regulations. The ruling states that an "individual is an employee for Federal employment tax purposes if the individual has the status of employee under the common law rules applicable in determining the employer-employee relationship." 1976–1 C.B. at 323. Wisconsin has abandoned the common law test for determining whether an individual is an employee in favor of a statutory test. Wisconsin Cheese argues that the "control and direction" element of the statutory test is identical to the common law test. We disagree. The statutory test must be administered with the legislation's purpose in mind, and therefore results in broader coverage than would the common law test. Although an owner-operator may be an independent contractor under the common law test used for federal unemployment tax determinations, that fact is not conclusive on Wisconsin courts.

The Revenue Ruling relied on *United States v. Mutual Trucking Co.*, 141 F.2d 655 (6th Cir. 1944). The lessee in that case was required to state in an application to the ICC for license plates that the plates would be displayed in motor vehicles operated by and under the control, supervision, and responsibility of the lessee. The opinion cites no lease language to that effect, however, and the case is therefore distinguishable.

Wisconsin Cheese claims that Treas. Reg. sec. 31.3306(i)–1(b) is to the same effect. Actually, the paragraph restates the common law test and concludes that "[i]n this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so." The Treasury Regulation therefore establishes the same principle that we apply in our holding.

The Indiana and Ohio cases cited by plaintiff are distinguishable because they focus on the presence or absence of actual control

from the guidance provided by Wisconsin precedent and by the legislation's stated purpose.

We conclude that DILHR's application of the statutory definition of employee to the facts of this case was consistent with precedent and with the statute's unambiguous language and purpose. We therefore hold that the statute was correctly applied.

Section 108.02(3), Stats., defines an employee as an "individual." DILHR does not contest Wisconsin Cheese's claim that corporations are not individuals as that term is used in the statute. The appeal tribunal disregarded the corporate status of the incorporated owner-operators, finding that the owner-operators had incorporated at the behest of and with the assistance of Wisconsin Cheese, that no advantage other than evasion of liability for unemployment compensation contributions would inure to Wisconsin Cheese from its efforts to assist owner-operators to incorporate, and that the inference to be drawn is that Wisconsin Cheese encouraged incorporation in order to avoid that liability.

Wisconsin Cheese cites *Milwaukee Toy Co. v. Industrial Comm.*, 203 Wis. 493, 495–96, 234 N.W. 748, 749 (1931), for the proposition that the corporate veil may not be pierced absent a showing that the incorporation was intended to accomplish some fraudulent purpose. It argues that no fraudulent purpose for the incorporations was shown to exist.

Inducing one's employees to hide behind a corporate when the inducement is intended to allow the employer

---

and do not indicate whether the right of control existed by virtue of a lease. The same is true of *United States v. Silk*, 331 U.S. 704 (1947). The Illinois case is distinguishable because the test for an employee stated in the opinion makes no mention of the ability to control the performance of services.

to escape liability for unemployment compensation contributions is a species of fraud.

> Where the corporate form of organization is adopted or a corporate entity is asserted in an endeavor to evade a statute or to modify its intent, courts will disregard the corporation or its entity and look at the substance and reality of the matter. This has been applied to . . . tax laws, and a workman's compensation law.

*General Motors A. Corp. v. Commissioner of Banks,* 258 Wis. 56, 64a, 45 N.W.2d 83, 87–88 (1950), *appeal dismissed,* 341 U.S. 945 (1951) (citation omitted). The principle applies with equal strength to unemployment compensation contributions.

An inference drawn from facts is treated as a finding of fact. *Gibson v. Department of Transportation,* 103 Wis. 2d 595, 607, 309 N.W.2d 858, 865 (Ct. App. 1981), *aff'd,* 106 Wis. 2d 22, 315 N.W.2d 346 (1982). Credible and substantial evidence in the record supports the inference that Wisconsin Cheese encouraged owner-operators to incorporate so that it could escape liability for unemployment compensation contributions. The record contains copies of two letters sent to owner-operators stating that it had decided to lease only from corporations. The letters contained a booklet given to owner-operators explaining the "benefits" of incorporation and recommending an accountant who would provide "bargain" services. Many of the benefits promised by the booklet are illusory, if not deceptive.[5] The only benefit to the employer from the incorporation of owner-oper-

---

[5] Limitation of liability does not seem a significant advantage to owner-operators in view of Wisconsin Cheese's obligation to provide public liability and cargo insurance. The booklet outlining the advantages of incorporation lists several deductions which allegedly may be taken as the result of incorporation, including the expense of a home office, a wife's salary, operating expenses, personal automobile expenses, business meals, and charitable con-

ators suggested by the record consists of a more professional atmosphere and improved quality of service from dealing with corporations. The hearing examiner was free to draw the inference that Wisconsin Cheese was more concerned with avoiding unemployment compensation contributions than with improving the professionalism of the owner-operators from whom it leased.

Wisconsin Cheese argues that some owner-operators pay unemployment compensation contributions on salaries they pay to hired drivers. It argues that corporate owner-operators are therefore employers rather than employees, as they hire themselves or someone else to drive the trucks. It is possible for a person to assume the role of both employer and employee for the purpose of unemployment compensation. *Sears,* 90 Wis. 2d at 741, 280 N.W.2d at 242; *Price County Telephone,* 47 Wis. 2d at 716–17, 177 N.W.2d at 910. Whether the corporate owner-operators are employers as well as employees is not an issue before us in this case.[6] We hold only that

tributions. To the extent that the deductions are legitimate, they would be available regardless of the owner-operator's corporate status. The booklet also states that owner-operators can save on their taxes by drawing a salary from the corporation and deducting it. The booklet neglects to mention that income tax must be paid on the salary.

Wisconsin Cheese suggests that incorporation permits sheltering of income for further investment. This appears to be an after-the-fact rationalization for its aggressive attempt to induce its owner-operators to incorporate. In any event, Wisconsin Cheese is unable to explain why it was so insistent about the incorporation of owner-operators. The logical inference is that it was not motivated by a desire to help owner-operators shelter their income.

[6] Similarly, whether drivers hired by owner-operators are employees of the owner-operators or of Wisconsin Cheese is not before us. *See* sec. 108.02(3)(a), Stats. (employee is one who performs services for an employing unit whether or not he is paid directly by the employing unit).

an owner-operator's employment of another person to drive his truck is not inconsistent with his status as an employee of Wisconsin Cheese.

*By the Court.*—Judgment affirmed.