WISCONSIN CHEESE SERVICE, INC., Plaintiff-Appellant,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and the Labor & Industry Review Commission, Defendants-Respondents.†

Court of Appeals

*No. 81–1444. Submitted on briefs September 12, 1983.—*
*Decided October 20, 1983.*
(Also reported in 340 N.W.2d 908.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Jon P. Axelrod* and *Douglas L. Flygt* and *DeWitt, Sundby, Huggett & Schumacher, S.C.* of Madison.

For the defendants-respondents the cause was submitted on the briefs of *Peter W. Zeeh,* of Madison.

Before Dykman, J., Cane, J. and Decker, J.

DYKMAN, J.    This case is before us on remand from the supreme court.  We held on a previous appeal that truck owner-operators who delivered goods for Wisconsin Cheese Service, Inc. were its employes for the pur-

pose of unemployment compensation tax contributions because they were not free from Wisconsin Cheese's direction and control under their contracts. *Wisconsin Cheese Service, Inc. v. DILHR*, 108 Wis. 2d 482, 322 N.W.2d 495 (Ct. App. 1982). The supreme court subsequently held that contract language similar to the language we relied on in *Wisconsin Cheese Service* did not establish contractual direction and control. *Star Line Trucking Corp. v. DILHR*, 109 Wis. 2d 266, 325 N.W.2d 872, 327 N.W.2d 144 (1982). The supreme court reversed our decision in *Wisconsin Cheese Service* and remanded it for consideration of whether the owner-operators were in fact free from Wisconsin Cheese's direction and control.[1]

We conclude that the Labor and Industry Review Commission's finding that the owner-operators were not free from Wisconsin Cheese's direction and control is not supported by credible and substantial evidence. We also conclude that LIRC's finding that the owner-operators were not customarily engaged in an independently established business is erroneous in light of *Star Line*. We reverse the circuit court judgment which affirmed LIRC's determination that the owner-operators were employes of Wisconsin Cheese.

Most of the relevant facts were stated in *Wisconsin Cheese Service* and will not be repeated here. Additional facts will be stated in the opinion.

Section 108.02(3), Stats., defines an "employe" for the purpose of unemployment compensation:

---

[1] The supreme court's order reversing and remanding *Wisconsin Cheese Service, Inc. v. DILHR*, 108 Wis.2d 482, 322 N.W.2d 495 (Ct. App. 1982), was not published. We are recommending that this opinion be published to alert the Bench and Bar that that opinion no longer reflects the law of this state.

(a) "Employe" means any individual who is or has been performing services for an employing unit, in an employment, whether or not the individual is paid directly by such employing unit; except as provided in par. (b) or (e).

(b) Paragraph (a) shall not apply to an individual performing services for an employing unit if the employing unit satisfies the department as to both the following conditions:

1. That such individual has been and will continue to be free from the employing unit's control or direction over the performance of his services both under his contract and in fact; and

2. That such services have been performed in an independently established trade, business or profession in which the individual is customarily engaged.

Both parts of par. (b) must be satisfied for an individual to not be found an employe under sec. 108.02(3). *Sears, Roebuck & Co. v. ILHR Department*, 90 Wis. 2d 736, 743, 280 N.W.2d 240, 243 (1979).

LIRC's findings may not be overturned unless they are unsupported by credible and substantial evidence. Sec. 102.23(6), Stats. The supreme court defined "credible and substantial evidence" as "relevant, credible and probative evidence upon which reasonable persons could rely to reach a conclusion." *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173 (1983). The determination whether a finding is supported by credible and substantial evidence must be made in light of the record as a whole. *Id.* at 54–55, 330 N.W.2d at 174. A finding is insufficiently supported if the evidence sought to be relied on is so discredited that it must be discarded as matter of law. *Id.*

In *Star Line*, LIRC found that the trucking corporation exercised actual control over the performance of services by owner-operators. It based its finding on the following factors:

(1) Star Line expected the drivers to haul loads for which Star Line had contracted with a customer and would pressure a reluctant driver to accept a load.

. . . .

(2) Star Line attempted by contract to restrict the drivers from seeking other employment.

. . . .

(3) [Star Line] has the right to terminate the services of a driver at any time, with notice, for any reason, including misconduct.

. . . .

(4) Although the drivers owned their trucks, they operated them with Star Line's decal displayed on the door and under ICC authority and PSC permits held by Star Line.

109 Wis. 2d at 281, 325 N.W.2d at 879. The supreme court concluded that these factors were discredited by other evidence in the record or as a matter of law. *Id.*

The evidence showing lack of control was:

(1) The drivers were considered "skilled operators" who owned their own truck equipment.

(2) The drivers assumed responsibility for their vehicle maintenance, insurance and trip expenses.

(3) The drivers sometimes refused to haul loads offered by Star Line.

(4) The drivers sometimes engaged helpers to assist them in performing services for Star Line.

(5) Star Line could complain to the drivers and/or terminate the equipment lease agreement. Star Line never exercised this termination right during the period involved.

(6) During the contract period, several contractor-lessors terminated the relationship in response to Star Line's complaints concerning vehicles being unavailable due to their use for other authority holders or traffic and weight violations during performance of the hauling contracts.

(7) The lessors were free to, and did on occasion, reject hauling contracts from Star Line.

(8) The means of performance, namely, which piece of equipment and which driver would be used as well as

the starting, completion and elapsed time, the loading, the routes used and number of stops, were within the control and under the supervision of the lessor's drivers.

*Id.* at 280, 325 N.W.2d at 879.

The supreme court held that LIRC's finding of actual control was not supported by credible and substantial evidence. *Id.* at 281, 325 N.W.2d at 879.

The facts of the present case showing lack of control are very similar to those in *Star Line*. The owner-operators owned their trucks, determined when the trucks needed servicing, and paid the maintenance charges. They paid for their gas, fuel tax, motel rooms and traffic tickets. They bought their own collision and "bobtail" insurance. They were free to, and sometimes did, refuse to haul outbound loads offered by Wisconsin Cheese. They could reject inbound loads arranged by Wisconsin Cheese if a better-paying load became available. Owner-operators could hire other drivers to substitute for them or, if they owned a second truck, to drive the other truck. Wisconsin Cheese could terminate the lease agreements, but no evidence was presented that it did so during the period in question. The owner-operators determined what routes to use, what hours to work, whether to drive the loads themselves or hire another driver, and were responsible for loading. Wisconsin Cheese had no driver orientation program, held no driver meetings, and issued no driver handbooks.

LIRC argues that its finding of actual control is supported by the following evidence:

(1) Owner-operators were instructed to call Wisconsin Cheese periodically during their trips. Not all drivers called in, however, and Wisconsin Cheese did nothing to the drivers who did not call.

(2) Owner-operators were not allowed to solicit Wisconsin Cheese's customers on their own accounts without Wisconsin Cheese's permission. This restriction on competition with Wisconsin Cheese is not unusual to business relationships which are not employer/employe relationships.

(3) Owner-operators were required to keep logs and mileage records. However, the mileage records were needed to determine how much fuel tax the owner-operator owed.

(4) Owner-operators were told the date by which a load had to be delivered. Deadlines for delivery were given only when customers requested them, however, and the customers set the dates. A customer's request for delivery by a certain date does not establish control by Wisconsin Cheese.

(5) If a dispute arose between a customer and an owner-operator, Wisconsin Cheese would attempt to mediate. If mediation was unsuccessful, however, the owner-operator could simply drop loads at one of Wisconsin Cheese's cold storage warehouses.

(6) The owner-operators were pressured to incorporate by threats that if they did not, Wisconsin Cheese would terminate their lease agreements. A few owner-operators did not incorporate, however, and their leases were not terminated.

The evidence LIRC relies on is thus discredited and does not support its finding that the owner-operators were in fact subject to Wisconsin Cheese's direction and control in the performance of their services. The first part of the two-part test in sec. 108.02(3)(b), Stats., is satisfied.

An individual will be considered an independent contractor only when both parts of the test are satisfied, however. *Sears,* 90 Wis. 2d at 743, 280 N.W.2d at 243. We therefore must determine whether the finding that

the owner-operators were not customarily engaged in an independently established business is supported by credible and substantial evidence. *Id.*

The *Star Line* court said:

For an individual to be customarily engaged in an independently established business, it must be such a business as the person has a proprietary interest in, an interest which he alone controls and is able to give away. Based on a review of the entire record, since the owner-operators owned their equipment, hired other drivers to perform hauling contracts for Star Line, and were free to select hauling contracts, we find that the independently established business test has been satisfied. [Citation omitted.]

109 Wis. 2d at 289a, 327 N.W.2d at 144 (on reconsideration).

The facts of the present case are identical to the facts that satisfied the independently established business in *Star Line*. LIRC argues that *Star Line* is of little precedential value because the court misapplied that test and deviated from precedent on the issue of control. This court is bound by prior decisions of the Wisconsin Supreme Court. *State v. Beno,* 110 Wis. 2d 40, 47 n. 2, 327 N.W.2d 712, 716 (Ct. App. 1982). The owner-operators involved here are not employes of Wisconsin Cheese under sec. 108.02(3), Stats., and *Star Line.*

*By the Court.*—Judgment reversed.