AMTRONIX INDUSTRIES, LTD., Petitioner-Respondent,

V.

State of Wisconsin, LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Appellant,

Dorothy HILL, Defendant.

Court of Appeals

No. 82–665. Argued December 2, 1982.—
Decided September 13, 1983.
(Also reported in 339 N.W.2d 802.)

---

For the defendant-appellant the cause was submitted on the brief of *Peter W. Zeeh* of Madison. Oral argument by *Peter W. Zeeh.*

For the petitioner-respondent the cause was submitted on the brief of *Chester J. Niebler* of *Niebler & Niebler*

of Menomonee Falls. Oral argument by *Chester J. Niebler*.

Before Scott, C.J., Voss, P.J., and Brown, J.

VOSS, P.J.   On July 1, 1980, the Labor and Industry Review Commission issued a decision assessing Amtronix Industries for additional unemployment compensation taxes.  On July 31, 1980, the Labor and Industry Review Commission also issued a decision holding that Dorothy Hill had been an Amtronix employee and, therefore, was eligible for unemployment compensation benefits from Amtronix' reserve account.  Subsequently, by an order dated March 9, 1982, the circuit court considered and reversed both of the Commission's decisions.  It is from this order that the Labor and Industry Review Commission appeals.

The dispositive issue raised on appeal is whether the Department of Industry, Labor and Human Relations (DILHR) is barred by collateral estoppel or otherwise from collecting the delinquent unemployment compensation taxes from Amtronix or paying Dorothy Hill unemployment compensation benefits from Amtronix' unemployment compensation reserve fund based on unemployment with Amtronix.  After reviewing the record, we conclude that DILHR is barred from collecting the delinquent unemployment compensation taxes from Amtronix prior to August 23, 1978.[1]  However, effective August 23, 1978, we find that DILHR is not barred from collecting unemployment compensation taxes from Amtronix or paying Dorothy Hill unemployment compensation benefits from Amtronix' unemployment compensation reserve fund.  Accordingly, we reverse in part and

[1] On August 23, 1978, the Department of Industry, Labor and Human Relations issued a determination concluding that the subcontractors were "employees" subject to the Unemployment Compensation Act.

affirm in part the trial court's decision finding that DILHR is barred from collecting unemployment compensation taxes and from paying Dorothy Hill unemployment compensation benefits.

This case is a consolidation of actions brought pursuant to secs. 108.09(7), 108.10(4) and 102.23, Stats., to review decisions of the Labor and Industry Review Commission which held that certain home workers for Amtronix were employees of Amtronix for purposes of the Wisconsin Unemployment Compensation Act. Amtronix Industries, Ltd. is the corporate successor to Lumicel Company, a proprietorship of George Vischulis who is now the sole shareholder of Amtronix. Amtronix is engaged in the manufacture of electronic circuit boards and employs approximately fifty people. In employing these people, Amtronix is subject to the usual regulations and requirements of the Worker's Compensation Act.

In addition to its workers and its shop, Amtronix has engaged the services of women claimed by Amtronix to be subcontractors. These subcontractors assembled electronic circuit boards and wire harnesses in their homes. When completed, the work was returned to Amtronix' shop, and approximately thirty days later, the workers were paid for their work. Usually, the subcontractors heard about these jobs from friends and then applied at Amtronix. After being interviewed, they typically were given an orientation and training period at Amtronix. At these sessions, the subcontractors were shown how to complete their work and the quality of work expected of them. After the instructional session, the job applicants were given a piece of work to do so that Amtronix could determine if their work was satisfactory.

The subcontractors were supervised by Amtronix' in-house foremen. If the work did not meet certain quality standards, Amtronix rejected the work, and the sub-

contractors were expected to rectify the problems and to meet the required standard. When the subcontractors picked up the work to be done, it was generally accompanied by written specifications and instructions. In addition, directions as to when the work was to be completed and delivered were also given. Also, on occasion, Amtronix specified the order in which work assignments should be completed. The subcontractors were instructed that they were to complete their work on time and also were informed that Amtronix could terminate the relationship at will. If a subcontractor was repeatedly late with work or repeatedly handed in inferior work, Amtronix would terminate the relationship.

All of the raw materials for the assembly of the electronic components were supplied either by Amtronix or its customers. Amtronix also furnished specialized tools needed for specific jobs and several other types of supplies to the subcontractors. For the most part, however, the subcontractors provided their own tables, lighting and tools, such as vises, pliers and sandpaper. None of the expenses incurred for tools and utilities by the subcontractors were reimbursed by Amtronix.

The amount of compensation that the subcontractors were to receive was usually predetermined in the purchase order. Occasionally, a subcontractor could negotiate with Amtronix to receive more money for her work.

Amtronix did work for a number of companies and advertised itself in the yellow pages for the purpose of obtaining additional customers. However, none of the subcontractors worked for any other company or anyone else during the period they performed services for Amtronix. The subcontractors also did not advertise or hold themselves out as available to customers for this type of work.

Dorothy Hill, the claimant in this benefits case, was one of Amtronix' subcontractors. Hill, after the 1978 audit, performed services for Amtronix from June 5, 1979 to October 18, 1979 as a subcontractor.

In 1974, DILHR, the state regulatory agency charged with administrating the Unemployment Compensation Act, conducted an audit of Amtronix. Subsequently, the Department issued a compliance report stating that the records and procedures of Lumicel, Amtronix' predecessor, were adequate to meet the unmployment compensation law requirements. The determination meant that any subcontractors of Amtronix' predecessor were considered by the Department as legitimate independent subcontractors under sec. 108.02(3)(b), Stats. After the 1974 audit had been completed, the Department issued a determination informing Amtronix' predecessor that "to the extent of our examination we find that you have properly reported your Wisconsin employment and wages and paid contributions thereon as required by the Act."

In 1978, another audit of Amtronix was conducted by DILHR. This audit covered a subsequent period from that of the 1974 audit. On August 23, 1978, the Department issued a determination finding that the subcontractors were "employees" subject to the Unemployment Compensation Act. Because of this determination, the Department assessed Amtronix additional unemployment compensation taxes for 1976, 1977 and the first calendar quarter of 1978.

Amtronix appealed that determination through the appellate framework of DILHR. Subsequently, Amtronix commenced suit for judicial review of the Commission's action.

In December 1979, as the above matter was being appealed, Dorothy Hill filed a claim for unemployment compensation benefits with the Department. The Department found her to have been an employee of Amtronix

and, thus, eligible for benefits from Amtronix' unemployment compensation reserve fund. Ultimately, Amtronix commenced a judicial review action of the Labor and Industry Review Commission's decision finding that Hill was an employee of Amtronix and was eligible for unemployment benefits. The circuit court issued an order reversing both the Commission's decision holding Amtronix owed back taxes and the decision finding Hill eligible for unemployment benefits. DILHR now appeals from that trial court ruling.

*Stafford Trucking, Inc. v. Department of Industry, Labor & Human Relations,* 102 Wis. 2d 256, 306 N.W.2d 79 (Ct. App. 1981), set forth a standard of review for cases such as this. In *Stafford,* the court stated:

At the outset, we note that our review of the circuit court and commission's actions is limited. We do not deal with the question of whether the circuit court made the right decision. Our task is merely to determine whether the commission's decision was correct. We, therefore, owe no special deference to the decision of the circuit court.

With respect to our review of the commission's determination:

"Findings of fact made by the department under Ch. 108 are conclusive if supported by any credible evidence in the record. This court does not weigh the conflicting evidence to determine what shall be believed. That is solely within the province of the administrative agency. It is not necessary that the findings of the department be supported by a preponderance of the evidence. This court is obliged to uphold the department's finding even though they be contrary to the great weight and clear preponderance of the evidence." [Citations omitted.]

*Id.* at 256, 306 N.W2d at 82.

Section 102.23(6), Stats., also sets forth the same standard of review. This section states that a court is

not to substitute its judgment for the Commission's as to the weight or credibility of the evidence supporting findings of fact. In addition, this statute states that the Commission's findings of fact may be overturned or set aside only if those findings are not supported by credible and substantial evidence in the record.

The key issue here is whether Dorothy Hill and the other subcontractors were employees of Amtronix or whether they were independent subcontractors. After reviewing the 1978 Amtronix audit, the Commission arrived at two initial conclusions: (1) the subcontractors' services for Amtronix were not performed free from Amtronix' direction or control, and (2) the subcontractors' services were not performed in an independently established trade, business or profession in which they were customarily engaged. Based on these two conclusions, the Commission determined that the subcontractors were employees of Amtronix.

After reviewing the record, we find that there is sufficient credible and substantial evidence in the record to support both of the Commission's conclusions and its final decision that the subcontractors were employees. The fact that Amtronix rejected unsatisfactory work, set deadlines for completing work, reprimanded subcontractors for not completing work on time, had the authority to set the priority of assignments, had the power to ultimately terminate the at-will employment relationship with the subcontractors, and the fact that the services provided by the subcontractors were an integral part of Amtronix' business leads us to agree with the Commission that the subcontractors were employees of Amtronix. Because we agree with the Commission's decision finding that the subcontractors were employees, the Department is not barred from collecting delinquent unemployment compensation taxes beginning August 23,

1978, the date on which the subcontractors were deemed to be employees of Amtronix.

However, we do not reach the same result for the period prior to August 23, 1978. In 1974, the Department issued an audit finding and compliance report stating that Amtronix' predecessor had met the unemployment compensation law requirements. Amtronix' predecessor had not considered the subcontractors to be employees at the time of the audit finding. This information was relied upon by Amtronix until the subsequent 1978 audit. The reliance on the 1974 audit finding, issued by the very department responsible for the administration of the unemployment taxes, was reasonable and serves to estop the Department from collecting the unemployment taxes during this period.

The defense of equitable estoppel consists of action by one which induces reasonable reliance by another to his detriment. *Chicago & Northwestern Transportation Co. v. Thoreson Food Products, Inc.*, 71 Wis. 2d 143, 153–54, 238 N.W.2d 69, 75 (1976). This doctrine, although not applied as freely against governmental agencies as it is in the case of private persons, has been applied against governmental taxing agencies in certain situations to prevent retroactive tax assessment. *Department of Revenue v. Family Hospital, Inc.*, 105 Wis. 2d 250, 313 N.W.2d 828 (1982) ; *Libby, McNeill & Libby v. Department of Taxation*, 260 Wis. 551, 51 N.W.2d 796 (1952).

In this regard, we find the rationale enunciated in the *Family Hospital* case persuasive. In *Family Hospital*, the Department of Revenue had issued two technical information memorandums which expressly listed parking receipts as a nontaxable item. Family Hospital relied on these memorandums and purposely failed to collect sales taxes on the receipts from the hospital's

parking lots. Subsequently, the Department of Revenue assessed a sales tax on these parking lot receipts. The Wisconsin Supreme Court upheld the Tax Appeals Commission's reversal of this assessment, holding that the action of the department in issuing the technical information memorandums estopped it from the subsequent assessing of the parking receipts. *Family Hospital*, 105 Wis. 2d at 257, 313 N.W.2d at 831. Since the memorandums were issued by the department for the purpose of aiding the taxpayer in his compliance with the tax laws, to allow the department to collect on these alleged past-due taxes would not be fair. *Id.* at 259, 313 N.W.2d at 832.

The action by the Department of Industry, Labor and Human Relations in issuing its 1974 compliance report was reasonably relied upon by Amtronix. If the Department had notified Amtronix in 1974 of a change in status of the subcontractors, Amtronix could have altered the direction or controls placed on the subcontractors in order to keep them exempt or it could have brought several of them into the plant as fulltime employees and terminated its relationship with the rest. Amtronix is "trapped"; it can no longer change its relationship with its subcontractors for the years before the 1978 audit, and it is now being told to pay unemployment compensation for employees it thought were exempt during this period. Payment of the unemployment taxes assessed for the 1974–78 period under these circumstances would work to Amtronix' detriment. For this reason, we hold that all three elements of equitable estoppel are met, and the Department cannot impose unemployment taxes prior to August 23, 1978.

In the action involving Dorothy Hill's unemployment benefits, we note that the record indicates she was employed by Amtronix from June 5, 1979 to October 18,

1979. We have already decided that the Department's 1978 audit is to be applied prospectively; thus, we also hold that Hill, since she was employed subsequent to August 23, 1978, is entitled to unemployment compensation benefits. Therefore, we affirm the trial court's decision finding that DILHR is barred from collecting unemployment compensation taxes prior to August 23, 1978 and reverse the decision denying Dorothy Hill unemployment compensation benefits.

*By the Court.*—Order affirmed in part and reversed in part.