ROYAL-GLOBE INSURANCE COMPANY, and another, Plaintiffs-Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant-Respondent.

*No. 75-778. Submitted on briefs December 1, 1977.—Decided January 3, 1978.*

(Also reported in 260 N.W.2d 670.)

For the appellants the cause was submitted on the brief of *Clayton R. Hahn* and *Borgelt, Powell, Peterson & Frauen, S. C.* of Milwaukee.

For the respondent Department of Industry, Labor and Human Relations, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

*PER CURIAM.* APPEAL from a judgment of the circuit court for Dane County: GEORGE R. CURRIE, Reserve Circuit Judge, Presiding. *Affirmed.*

Plaintiffs, Royal Globe Insurance Company and Crucible Steel Casting Co. appeal from a circuit court judgment that affirmed a worker's compensation order of the defendant, Department of Industry, Labor and Human Relations (hereafter D.I.L.H.R.). The D.I.L.H.R. order concluded that the defendant Willie Burt (hereafter claimant) was thirty-five percent permanently disabled beginning April 23, 1974. The plaintiffs claim that the original order was erroneous because the claimant did not have a last day of work or any compensable disability under the worker's compensation statutes.

The issues in this case are as follows:

1. Was the circuit court judgment affirming the D.I.L.H.R. order contrary to law because the claimant did not sustain a last day of work and therefore no date of injury under sec. 102.01(2)(f), Stats. (1975)?

2. Was the circuit court judgment erroneous because the claimant sustained no compensable disability?

3. Was the circuit court judgment erroneous because the claimant was, at most, suffering from non-disabling silicosis under sec. 102.565, Stats. (1975)?

The claimant began working for Crucible Steel Casting Company (hereafter company) in 1951. The claimant performed various jobs for the company, all of which exposed him to sand and iron dust. Until 1974 the claimant did not wear, and was not required to wear a respirator. He began to have respiratory problems and weight loss in 1969 and was then diagnosed as having a spot on his lung. Since 1969 the claimant has been under the care of various physicians. He returned to work, but experienced frequent colds and left chest pains.

On April 23, 1974 claimant was hospitalized for surgery on his left lung. Claimant convalesced following his surgery until September 30, 1974, when he returned to the company to work as an overhead crane operator. This was the same work that the claimant was performing before his surgery. Since the surgery, the claimant has experienced shortness of breath, frequent shoulder cramps and left side pain attributable to the surgery and to his lung condition. Due to his condition, the claimant has lost approximately three days of work per month since his surgery.

Dr. Norbert Enzer, the only medical witness at the hearing, testified that the claimant sustained injury in the nature of silicosis and siderosis in both lungs, and atypical or active infection tuberculosis in the left lung. Dr. Enzer also testified that claimant's condition arose out of his employment with the company. Dr. Enzer concluded that claimant had a permanent total disability of between thirty-five and fifty percent.

D.I.L.H.R. found that as a result of his injury, claimant ". . . sustained temporary total disability for the period from April 23, 1974 to September 30, 1974, . . . and also sustained minimal permanent partial disability equivalent to thirty-five percent permanent total disability . . ."

## Last Day Of Work

The plaintiffs first contend that the claimant did not have a last day of work and therefore no date of injury in accordance with sec. 102.01(2)(f), Stats. (1975). That statute provides that,

"Time of injury, occurrence of injury, or date of injury means the date of the accident which caused the injury, or in the case of disease, the last day of work for the last employer whose employment caused disability. . . ."

At the time of the D.I.L.H.R. hearing, the claimant was still employed by the company, but in *Wagner v. Industrial Comm.*, 273 Wis. 553, 561, 562, 79 N.W.2d 264, 80 N.W.2d 456 (1956), this court stated that,

". . . While sec. 102.01(2) provided that in case of occupational disease the date of injury is the last day of work for the last employer whose employment caused disability, *such provision applies only when the wage loss occurs after the termination of employment, and, where there is wage loss from the occupational disease before the termination of employment, the date of the commencement of such wage loss establishes the date of injury.* General A. F. & L. Assur. Corp. v. Industrial Comm. (1936), 221 Wis. 540, 543, 226 N.W. 224, and Green Bay Drop Forge Co. v. Industrial Comm. (1953), 265 Wis. 38, 47, 48, 60 N.W.2d 409, 61 N.W.2d 847. The reason for this, as explained in the opinions in such two cited cases, is because the 1933 amendment to sec. 102.01(2), which defines date of injury with respect to disabling occupational disease, was intended to render compensable any disability from occupational disease occurring after the employment causing the same had been terminated. *Such 1933 amendment was not intended to change the prior rule established by court decision for determination of date of injury with respect to disabling occupational disease where wage loss had actually*

*occurred prior to termination of employment, or in situations where the employment had not ended.*

"Thus in the instant case Wagner had actually sustained a wage loss in April, 1951, before his employment with Ampco finally terminated on October 2, 1951, and the commission properly found April 6, 1951, to have been the date of injury." (Emphasis added.)

The plaintiffs cite *Wagner, supra,* but nevertheless claim that there can be no date of injury under sec. 102.01(2)(f), Stats. (1975), unless there is a final day of work. In support of this contention, plaintiffs cite many cases where employment was terminated prior to a finding of permanent disability. *Wagner, supra* stated that termination of employment is not necessary for a worker's compensation recovery in an occupational disease case. Other cases, cited by plaintiffs, where employment was terminated, are factually different from *Wagner, supra* and the case at bar. These other cases involve situations where employment was terminated and are not controlling here.[1]

---

[1] The plaintiffs also concede that in *Green Bay Drop Forge Co. v. Industrial Comm.,* 265 Wis. 38, 44, 45, 60 N.W.2d 409, 61 N.W.2d 847 (1953), a permanent disability award was made for an occupational disease where the claimant was still employed. The plaintiffs attempt to distinguish *Green Bay Drop Forge, supra,* because that case involved hearing loss, a schedule injury under the worker's compensation statute. With schedule injuries, impaired earning capacity is presumptively included in the statutory schedule. This difference in *Green Bay Drop Forge* is unimportant for two reasons. First, an award for permanent disability can be made in a nonschedule occupational disease case without an actual loss of earnings. *Kohler Co. v. I.L.H.R. Dept.,* 42 Wis.2d 396, 406, 407, 167 N.W.2d 431 (1969). Second, the evidence in this case is uncontradicted that the claimant lost three days of work per month since his lung surgery. This would cause a loss of wages.

*Compensable Disability*

The plaintiffs next contention is that claimant sustained no compensable disability because at the time of hearing he was employed full time without any wage loss. The first response to this argument is that it is based on a false factual predicate. The claimant has suffered some wage loss because he has not been able to work an average of three days per month since his surgery. Second the plaintiffs concede that under the rule of *Kohler, supra,* wage loss is no longer a prerequisite for making an award for permanent disability. The plaintiffs contend, without authority, that while wage loss may not be an essential element in finding a disability under *Kohler, supra,* a wage loss is nonetheless essential in establishing a "date of injury" under sec. 102.01(2)(f), Stats. (1975). Without a "date of injury" a permanent disability award cannot be calculated.

In this case, D.I.L.H.R. found that the claimant sustained a minimal permanent partial disability of thirty-five percent as of April 23, 1974. D.I.L.H.R.'s findings concerning the date of injury are factual determinations that will not be upset if supported by any credible evidence. *Wagner* at 273 Wis. 562. *R. T. Madden, Inc. v. I.L.H.R. Dept.,* 43 Wis.2d 528, 547–548, 169 N.W.2d 73 (1969). On April 23, 1974 the claimant was hospitalized for lung surgery. He convalesced from that surgery until September 30, 1974. After that time he missed three work days per month because of respiratory problems. D.I.L.H.R.'s findings that the claimant became thirty-five percent disabled as of April 23, 1974 were supported by credible evidence.

## Non-disabling Silicosis

Lastly, the plaintiffs contend that at most claimant was suffering from non-disabling silicosis under sec. 102.565(1), Stats. (1975). That section provides:

"102.565 *Silicosis, Nondisabling; Medical Examination; Conditions Of Liability.* (1) When an employe working subject to this chapter is, because he has a nondisabling silicosis, discharged from the employment in which he is engaged, or when an employe ceases such employment and it is in fact inadvisable for him on account of a nondisabling silicosis to continue in it, and suffers wage loss by reason of such discharge, or such cessation, the department may allow such compensation on account thereof as it deems just, not exceeding $7,000. . . ."

This section doesn't apply to claimant because he wasn't discharged from employment. The plaintiffs use this section to argue that as a matter of law if claimant couldn't qualify for nondisabling silicosis benefits then he shouldn't have been entitled to a permanent disability award.

This argument ignores that the claimant was also suffering from siderosis, tuberculosis and the effects of his lung surgery. The claimant's permanent partial disability was based on these conditions as well as the silicosis.

The plaintiffs' argument is also an indirect means of challenging D.I.L.H.R.'s finding of thirty-five percent permanent disability. D.I.L.H.R.'s findings on the extent of disability will be affirmed if they are supported by any credible evidence. *Swiss Colony, Inc. v. I.L.H.R. Dept.*, 72 Wis.2d 46, 59, 240 N.W.2d 128 (1976). In this case, the credible evidence was the uncontradicted testimony of Dr. Enzer that because of respiratory problems, the claimant had suffered thirty-five to fifty percent permanent disability.

*By the Court.*—Judgment affirmed.