STAFFORD TRUCKING, INC., a Wisconsin corporation, Plaintiff-Appellant,†

V.

State of WISCONSIN, DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant-Respondent.

Court of Appeals

*No. 80–1301. Argued February 19, 1981.—Decided April 21, 1981.*
(Also reported in 306 N.W.2d 79.)

For the plaintiff-appellant there was a brief and oral argument by *Robert J. Bauman* of *Godfrey & Kahn, S.C.*, of Milwaukee.

An amicus curiae brief was submitted on behalf of Wisconsin Motor Carriers Association by *Jon P. Axelrod* and *Douglas L. Flygt* of *DeWitt, Sundby, Huggett & Schumacher, S.C.*, of Madison.

† Petition to review denied.

For the defendant-respondent there was a brief and oral argument by *Peter W. Zeeh* of Madison.

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J.    This is an appeal from the circuit court of Waukesha county's affirmance of a ruling of an appellate tribunal of the Department of Industry, Labor & Human Relations that "owner-operators" of semitractors who leased their services to Stafford Trucking, Inc. were employees of Stafford and that Stafford was liable for unemployment compensation contributions in the amount of $3,214.56. The sole issue raised by the instant appeal is whether the conclusion that the owner-operators are employees for unemployment compensation purposes under sec. 108.02(3), Stats., is correct. We affirm.

A deputy of DILHR made an initial determination that the owner-operators of the tractors pulling Stafford's trailers were employees of Stafford. This determination was appealed by Stafford, and following a hearing, an examiner, acting as an appeal tribunal, affirmed the decision of the deputy. The decision of the examiner was then appealed to the Labor and Industry Review Commission and that commission affirmed the findings and decision of the appeal tribunal. The decision of the commission was appealed to the circuit court for Waukesha county pursuant to sec. 108.09(7) and sec. 102.23, Stats. The circuit court for Waukesha county entered a judgment affirming the decision of the review commission. Stafford appeals from that judgment.

Stafford Trucking, Inc. is a Wisconsin corporation engaged in interstate trucking of foundry sand. In order to facilitate this commercial enterprise, Stafford owns forty-five flatbed and pneumatic tank semitrailers. Stafford holds L.C. No. 41346 from the Wisconsin Public Service Commission and is thereby authorized to conduct its business in this state. Stafford also owns fifteen

semitractors which are driven by conceded employees of Stafford. These drivers are not the subject of this action.

In order to fully utilize its forty-five semitrailers, Stafford also engages the services of truckdrivers who own their own tractors and who are termed "owner-operators." These drivers pull Stafford trailers pursuant to a written contractual lease agreement. Such leases are for a one-year term with an option to renew. Many of the terms of the leases are prescribed by regulations of the Wisconsin Public Service Commission. Some pertinent provisions of the leases read as follows:

8. The LESSEE [Stafford Trucking] expressly reserves the right to control the manner, means and details of, and by which the driver of such leased equipment performs his service, as well as the ends to be accomplished.

9. The LESSOR [owner-operators] agrees that during the term of this Lease, the LESSEE shall have complete possession and control of the vehicle/s subject to this Lease, and that the LESSOR will not cause or permit such vehicle/s to be operated by anyone other than the LESSEE.

. . .

12. The LESSEE agrees that during the term of this Lease, the leased vehicle/s shall be solely and exclusively under the possession, direction, and control of the LESSEE who shall assume full common carrier responsibility for the operation of such vehicle/s as prescribed by I.C.C. Ex Parte No. MC–483, as amended.

. . .

15. This Lease may be cancelled by either party hereto by thirty (30) days written notice to the other. . . .

The owner-operators operating pursuant to Stafford's authority are required to bear decals showing Stafford's name and L.C. number. The owner-operators are instructed how to operate the pneumatic trailers prior to being allowed to pull Stafford's trailers. Stafford has authority to require the owner-operators to work fixed schedules or nights or weekends. If a driver refuses to

take loads as requested, Stafford can terminate the lease under the thirty days notice provision. Stafford can also terminate the lease of a driver if that driver maintains his truck in an unsafe manner or operates the truck dangerously. Additionally, Stafford directs when freight is to be picked up or delivered at a particular time. Stafford does all the billing and collecting from its hauling customers. The owner-operators are paid seventy-five percent of whatever the load or run pays.

Owner-operators are allowed to haul for other trucking companies on their return trips to Wisconsin but only with the express or tacit permission of Stafford Trucking. If hauling is done on the return trips, the drivers are required to pay ten percent of their revenue from the trip over to Stafford.

All citations for overweight trucks are issued directly to Stafford because the trucks are operating under its authority. Public liability and property damage insurance on the trucks is issued on a blanket basis in Stafford's name. Stafford is reimbursed for insurance costs through a deduction in the owner-operators' pay. Licenses on the owner-operators' trucks are jointly in the names of Stafford and the drivers because the drivers are unable to obtain truck licenses unless they are under a lease agreement with a carrier holding proper operating authority.

Section 108.02(3)(c), Stats., states that subsection 108.02(3) is to be used for determining an employing unit's liability under the contribution provisions of ch. 108. Section 108.02(3)(a), Stats., defines "employee" as "any individual who is or has been performing services for an employing unit, in an employment, whether or not the individual is paid directly by such employing unit; except as provided in par. (b) or (e)."

Subsection (b) of sec. 108.02(3), Stats., states that an individual will not be deemed an "employee" if: (1) such individual has been and will continue to be free

from the employing unit's control or direction over the performance of his services both under his contract and in fact, and (2) such services have been performed in an independently established trade, business or profession in which the individual is customarily engaged. This provision, therefore, demands that the two part test be met if a worker wants to avoid the general definition of the term "employee." The issue presented on this appeal is whether Stafford's owner-operators satisfy both paragraphs one and two of sec. 108.02(3)(b), Stats., and thereby qualify as independent businessmen so as to avoid the general "employee" definition. We conclude that they fail to satisfy either paragraph of sec. 108.02(3)(b), Stats.

At the outset, we note that our review of the circuit court and commission's actions is limited. We do not deal with the question of whether the circuit court made the right decision. Our task is merely to determine whether the commission's decision was correct. *Liberty Trucking Co. v. ILHR Department,* 57 Wis.2d 331, 342, 204 N.W.2d 457, 463–64 (1973). We, therefore, owe no special deference to the decision of the circuit court.

With respect to our review of the commission's determination:

Findings of fact made by the department under Ch. 108 are conclusive if supported by any credible evidence in the record. *R.T. Madden, Inc. v. I.L.H.R. Dept.,* 43 Wis.2d 528, 547, 169 N.W.2d 73 (1969). This court does not weigh the conflicting evidence to determine what shall be believed. That is solely within the province of the administrative agency. *Id.* It is not necessary that the findings of the department be supported by a preponderance of the evidence. This court is obliged to uphold the department's finding even though they be contrary to the great weight and clear preponderance of the evidence.

*Sears, Roebuck & Company v. ILHR Department,* 90 Wis.2d 736, 744, 280 N.W.2d 240, 243 (1979).

In this case, we must apply the findings of the commission, if substantiated by the evidence, to sec. 108.02 (3), Stats., and determine whether the owner-operators are employees for purposes of unemployment compensation. The resolution of this controversy is purely a matter of application of law. Stafford does not challenge the specific findings of fact made by the appeal tribunal. Because we are dealing with a question of law, the conclusions made by the appeal tribunal with regard to the application of sec. 108.02(3), Stats., are not conclusive on this court and will be sustained only if they are found to be reasonable. *Fitzgerald v. Globe-Union, Inc.,* 35 Wis.2d 332, 337, 151 N.W.2d 136, 139 (1967).

The fact that the owner-operators may be independent contractors under the common law does not necessarily bar them from being employees under the act. Their status under the act must be determined from the act itself in view of the purpose of the act as defined therein. *Sears, Roebuck & Co., supra,* at 743, 280 N.W.2d at 243.[1] It has been held that this statute was drafted to provide broad coverage. *Id.* at 752, 280 N.W.2d at 247.

The trial court, in its written decision addressing this controversy, concluded that the owner-operators were employees under the definition set forth in sec. 108.02 (3) (a), Stats., since the owner-operators had been performing services for an employing unit in an employment. The trial court further concluded that the owner-operators were not exempted from the definition by either of the provisions set forth in sec. 108.02(3) (b),

[1] The purpose of the Unemployment Compensation Act is delineated in sec. 108.01(1), Stats. That section clearly states that the Act was meant to aid the unemployed worker who is tied to the labor market and unable to find work and to limit his economic loss and his loss of purchasing power in society. *See also Milwaukee Transformer Co., Inc. v. Industrial Commission,* 22 Wis.2d 502, 511, 126 N.W.2d 6, 12 (1964); *Moorman Manufacturing Co. v. Industrial Commission,* 241 Wis. 200, 204–05, 5 N.W.2d 743, 745 (1942).

Stats. The court noted that the owner-operators were not free from the employing unit's control or direction and that such services were not performed in an independently established trade, business or profession. We agree with the conclusion of the trial court.

There is little dispute over whether the owner-operators fall within the confines of the definition of an employee set forth in sec. 108.02(3)(a), Stats. There is substantial controversy, however, over whether the owner-operators are exempted under subpart (b) of sec. 108.02(3), Stats. In order for the owner-operators to be eligible for exemption under the first prong of the subpart (b) test, it would have to be shown that the owner-operators are free from the employing unit's "control or direction over the performance of [their] services both under [their] contract and in fact."

While there is no specific definition of the terms "control or direction" in ch. 108, Stats., there is guidance on what process should be used to establish a definition. Section 108.02(21), Stats., states:

Any word or phrase used in this chapter and not specifically defined herein shall be interpreted in accordance with the common and approved usage thereof and in accordance with other accepted rules of statutory construction. No legislative enactment shall control the meaning or interpretation of any such word or phrase, unless such enactment specifically refers to this chapter or is specifically referred to in this chapter.

A dictionary provides the common and approved usage of words. *Milwaukee County v. ILHR Department*, 80 Wis.2d 445, 450, 259 N.W.2d 118, 121 (1977). *Webster's Third New International Dictionary* (1976), defines the noun "control" as "the act or fact of controlling . . . power or authority to guide or manage . . . directing or restraining domination." The same dictionary defines the verb "control" as meaning "to exercise restraining

or directing influence over; . . ." *Webster's* defines "direction" as "guidance or supervision of action, conduct, or operation."

The lease agreement entered into by the owner-operators and the practices followed by Stafford and the owner-operators show that Stafford unquestionably has the right and power to direct and control the owner-operators' conduct. It is immaterial whether the right or power to control is in fact exercised as long as the right to exercise such control exists.

The lease states that Stafford shall have "complete possession and control" of the truck under the lease and that the owner-operator will not allow the truck to be operated for anyone other than Stafford. Another paragraph of the lease states that Stafford "reserves the right to control the manner, means and details of, and by which the driver . . ." of the leased equipment performs the service, as well as the ends to be accomplished. Under the lease, the drivers further agree that the trucks are "solely and exclusively under the possession, direction, and control" of Stafford. The lease further allows Stafford to terminate the employment relationship upon thirty days written notice for any or no reason at all.

Stafford's practices also evidence control over the owner-operators. Stafford will terminate the lease if drivers damage its equipment and do not repair the damage. The drivers are trained by Stafford on how to operate the pneumatic trailers, and the drivers are not allowed to make deliveries until they receive this training. The drivers must obtain permission before using Stafford's equipment to haul for other trucking companies. Stafford, furthermore, has the power to require drivers to work nights and weekends and to deliver freight by a particular time period.

Clearly, Stafford has substantial power to direct or control the conduct of the drivers who have entered into

the lease agreements. The practices of Stafford, furthermore, show that such power is exercised during its everyday operation. The owner-operators, therefore, fail to meet the requirements of the first prong of the exemption test.

The owner-operators also fail to fall within the confines of the second prong of the exemption test. The owner-operators do not perform their services in an "independently established trade, business or profession." The trucks could not be operated for the use of anyone other than Stafford without Stafford's permission. The drivers do not hold their own operating authority. The drivers cannot even get a license to operate their trucks without being under the operating authority of Stafford or someone like Stafford who has such an authority. The owner-operators do not have their own customers nor do they solicit or bill any customers. Insurance is provided through Stafford because it is nearly impossible for the drivers to obtain insurance on their own. The truckers are, furthermore, not held responsible to customers, the public or the regulatory authority. The economic dependence of the owner-operators on Stafford's customers, trailers, insurance and operating authority is too pervasive to say that they had any business independent of Stafford. A truly independently established businessman would obtain his own operating authority, equipment, insurance and customers. If the owner-operators were terminated by Stafford, in all likelihood they would be out of work until they could make similar arrangements with another carrier.

Stafford argues that the tribunal's findings of fact do not support its determination because the tribunal erroneously relied upon the "control and direction" language in the leases and the Public Service Commission regulations as the only factual basis for its conclusion. Stafford contends that this is error as a matter of law

because the meaning of control and direction in the leases and the Public Service Commission regulations is different from the meaning of the language used in sec. 108.02(3)(b), Stats. Stafford submits that its right of control and direction is derived solely from regulations promulgated by the Public Service Commission. Stafford contends that the only reason the control and direction language is contained in the leases is to facilitate a relationship which would allow the owner-operators to truck under its license.[2] Stafford argues that the control and direction language in the leases only refers to the concerns expressed by the Public Service Commission in its attempt to promote carrier responsibility. Stafford submits that the "control and direction language as used in the Unemployment Compensation Act has different meaning since the Act intends to protect those individuals who are economically dependent upon a particular employer." Consequently, it is alleged that the court and appeal tribunal employed the wrong meaning for the control and direction language when interpreting ch. 108 within the context of this case.

We find Stafford's argument unpersuasive. The language of sec. 108.02(3), Stats., is clear and unambiguous. We need not go through the mental acrobatics Stafford proposes in order to glean the meaning of the legislature's terms. When the plain meaning of the words in a statute are apparent, a court need not resort to either construction or case law to bolster its recognition of that plain meaning. *Moherek v. Tucker*, 69 Wis.2d 41, 45, 230 N.W.2d 148, 150 (1975); *Amidzich v. Charter*

---

[2] Wis. Adm. Code, sec. PSC 60.03(2), states that any such lease:

Shall provide for the exclusive possession, control, and use of the motor vehicle involved by the authorized carrier and the complete assumption by such authorized carrier of full responsibility to the public, the shippers, and all regulatory agencies having jurisdiction, during the entire period of the lease, . . . .

*Oak Fire Insurance Co.,* 44 Wis.2d 45, 51, 170 N.W.2d 813, 816 (1969). Where the statutory language is clear, no judicial rule of construction is permitted, and we must arrive at the intent of the legislature by giving the language its ordinary and accepted meaning. *City of West Allis v. Rainey,* 36 Wis.2d 489, 495, 153 N.W.2d 514, 517 (1967). The owner-operators fall within the "ordinary and accepted meaning" of the language of sec. 108.02(3), Stats.

Because we conclude that the evidence supports the tribunal's findings of fact and since we conclude that the tribunal did not erroneously interpret or apply the Unemployment Compensation Act, we affirm the judgment and order of the circuit court.

*By the Court.*—Judgment and order affirmed.