GENERAL CASUALTY COMPANY OF WISCON-
SIN, and Sharon Plumbing & Heating, Plaintiffs-
Appellants,

v.

LABOR & INDUSTRY REVIEW COMMISSION,
and Steven Schrock, Defendants-Respondents.

Court of Appeals

*No. 91–0556. Submitted on briefs September 6, 1991.—Decided
October 17, 1991.*

(Also reported in 477 N.W.2d 322.)

174

For the plaintiffs-appellants the cause was submitted on the brief of *Walter D. Thurow* of Madison.

For the defendants-respondents the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.   General Casualty Company, a worker's compensation insurer, and Sharon Plumbing and Heating, its insured, appeal from a decision of the Labor and Industry Review Commission granting worker's compensation benefits to Steven Schrock. The issues are: (1) whether there is credible and substantial evidence to support the commission's determinations that Schrock sustained a disabling occupational disease and that the date of his injury/disability[1] was December 10, 1979, during his employment with Sharon; and (2) whether the fact that Schrock was compensated for time away from work for medical treatment, and thus incurred no actual wage loss, precludes a finding of disability.

We conclude that the commission's determination of both the existence and the date of the onset of Schrock's disabling disease—the "date of injury"—are supported by the evidence of record and applicable law. We also conclude that the fact that Schrock was compensated for lost time due to his visits to a doctor does

---

[1]As indicated, Schrock's disability was not the result of a specific injury but rather was caused by disease. Section 102.01(2)(c), Stats., however, equates the two in its definition of "injury" as "mental or physical harm to an employe caused by accident or disease . . .." Thus the date of injury and the date of the onset of the disease are synonymous under the Act.

176

not preclude recovery of benefits.[2]

Schrock began working for Sharon Plumbing in 1970. He suffered a job-related injury to his back in 1972 which required corrective surgery. He returned to full time work at Sharon in April, 1973, and continued his employment there until the company went out of business on December 30, 1983. Throughout the ten-year period, Schrock's work was heavy and strenuous. In late 1979, he began seeing a doctor for recurring back pain, and although his visits were during working hours, he did not lose any pay because Sharon compensated him for the lost time.

After Sharon closed its doors in 1983, Schrock went to work for an Illinois plumbing firm. He worked in Illinois from February 1984 and until July 1986, and while his duties were less strenuous than those he had performed for Sharon Plumbing, they did involve occasional heavy lifting. In July, 1986, Schrock's back condition deteriorated and he began a course of treatment that soon culminated in further surgery and resulting disability.

After the surgery, Schrock applied for worker's compensation disability benefits in Wisconsin. The commission found that he sustained an occupational back disease caused in substantial part by his employment with Sharon Plumbing. The commission determined that the date of disability—the date of injury under sec. 102.01(2)(g), Stats.[3]—was December 10, 1979, the first

[2]We review the commission's decision, not the circuit court's. *Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981).

[3]Section 102.01(2)(g), Stats., provides in relevant part:

"[T]ime of injury", "occurrence of injury", or "date of injury" means:

. . ..

2. In the case of disease, the date of disability or, if that date

day he missed work because of the disease. The commission apportioned eighty-one percent of Schrock's final disability to his employment with Sharon and nineteen percent to aggravation and acceleration of that condition resulting from his subsequent employment in Illinois and apportioned his benefits accordingly.

Whether an employee has sustained a disabling occupational disease arising out of his employment—and the date on which it is sustained—are questions of fact for the commission to determine. *Consolidated Papers, Inc. v. DILHR,* 76 Wis. 2d 210, 216, 251 N.W.2d 69, 72 (1977); *Shelby Mut. Ins. Co. v. DILHR,* 109 Wis. 2d 655, 659–60, 327 N.W.2d 178, 180 (Ct. App. 1982). And the commission's findings of fact are conclusive upon review if they are supported by credible and substantial evidence. Sec. 102.23(6), Stats; *Royal-Globe Ins. Co. v. DILHR,* 82 Wis. 2d 90, 95, 260 N.W.2d 670, 673 (1978). Indeed, as long as there is credible evidence to support the findings, we will uphold them even if they are against the great weight and clear preponderance of the evidence. *Goranson v. DILHR,* 94 Wis. 2d 537, 554, 289 N.W.2d 270, 278 (1980).

The commission made two findings of fact essential to this appeal: first, it found that Schrock sustained a disabling occupational disease arising out of his employment with Sharon Plumbing; second, it found that Schrock's date of injury was December 10, 1979. Both findings are supported by credible and substantial evidence.

The record indicates that Schrock left work to visit Dr. Stanley Brandon for back pain on December 10,

occurs after the cessation of all employment that contributed to the disability, *the last day of work for the last employer whose employment caused disability.* [Emphasis added.]

178

1979. Dr. Brandon indicated that Schrock's condition was caused by degenerative disc disease occurring in the area where the 1972 surgery had been performed. Schrock experienced recurring pain and took additional time off from work for medical treatment in 1982 and again in 1983. The physician who treated Schrock prior to his laminectomy in 1986, Dr. Joseph Cusick, testified that his occupational back disease was caused by multiple small traumas sustained in part during his ten-year employment with Sharon Plumbing between 1973 and 1983.

Based on these facts, the commission found that Schrock's date of injury was December 10, 1979, noting that it has "consistently interpreted" sec. 102.01(2), Stats., as setting the date of disability or injury at the point "when the symptoms of the occupational disease result in lost work time." As indicated, it apportioned eighty-one percent of the disability to Schrock's work for Sharon.

Where, as here, the credible evidence supporting the commission's decision is sufficient to exclude speculation or conjecture, we may not overturn it. *Bumpas v. DILHR,* 95 Wis. 2d 334, 343, 290 N.W.2d 504, 508 (1980). The evidence in this case meets that standard.

General Casualty argues, however, that the language of sec. 102.01(2)(g)2, Stats., compels a different result—that under the statute Schrock's "last day of work" must be held to mean the last day he worked in Illinois prior to the 1986 laminectomy. As a result, General Casualty maintains that the Wisconsin act is inapplicable and the commission erred in awarding compensation.

While sec. 102.01(2)(g)2, Stats., provides that the date of injury is the last day of work for the last employer whose employment causes disability, the provision applies only "if [the date of disability] occurs after the cessation of all employment." Where, however, "there is wage loss from the occupational disease before the termination of employment, the date of the commencement of such wage loss establishes the date of injury." *Royal-Globe,* 82 Wis. 2d at 93, 260 N.W.2d at 672 (emphasis omitted), quoting *Wagner v. Indus. Comm'n,* 273 Wis. 553, 561, 79 N.W.2d 264, 268 (1956). Since the commission found that Schrock first sustained wage loss from his back disease on December 10, 1979, when he sought medical treatment during working hours while still employed by Sharon Plumbing, that is the date of disability.[4]

General Casualty disagrees. It contends that the commission could not properly find that Schrock was disabled while working for Sharon because Sharon did not dock his pay when he took time off to see a physician in 1979, 1982 and 1983. We disagree.

---

[4]General Casualty argues that the commission's decision is contrary to the "no-apportionment rule" explained in *Employers Mut. Liab. Ins. Co. v. McCormick,* 195 Wis. 410, 217 N.W. 738 (1928). *McCormick* held that the company which insures the worker at the time the disability occurs is the one that must pay the compensation awarded and may not seek contribution from previous employers.

General Casualty's reliance on *McCormick* is misplaced; *McCormick* simply reinforces the commission's decision that Sharon Plumbing must compensate Schrock because it was the company for whom Schrock was employed when the disability first occurred. Moreover, the *McCormick* no-apportionment rule applies only to situations involving successive *Wisconsin* employment.

180

Worker's compensation claims usually fall into one of two categories: disability caused by accident and disability caused by disease. It is normally easier to determine the date of an accident-caused disability than one caused by disease.

> An industrial injury or accident is an event, fixed as to time and place. There may be dispute as to the fact of such injury, place of injury, extent of injury or consequences of injury. But the focus is on a particular occurrence at a certain place and definite time.
>
> [On the other hand,] an occupational disease is a process, usually extending over a considerable span of time. It has a beginning, relevant on the issue of causation. It has a progression but this can vary in individual cases. There can be a steady deterioration, swift or slow but uninterrupted. There can be improvement and relapse . . .. On a claim for benefits for permanent disability, most important is the question, When did the occupational disease ripen into a disabling affliction? *Kohler Co. v. DILHR,* 42 Wis. 2d 396, 400, 167 N.W.2d 431, 432 (1969).

Because of the difficulty in determining when an occupational disease ripens into a disabling condition, the earlier cases created a conclusive presumption that that point is reached when the employee first suffers a wage loss due to an occupational disease. *See, e.g., Montello Granite Co. v. Indus. Comm'n,* 227 Wis. 170, 186–88, 278 N.W. 391, 398 (1938).

However, while this "wage-loss presumption" facilitates factual determinations made by the commission, actual wage loss is not a prerequisite to a finding of disability. *Royal-Globe,* 82 Wis. 2d at 95, 260 N.W.2d at 673; *Kohler,* 42 Wis. 2d at 405, 167 N.W.2d at 435; *Montello Granite,* 227 Wis. at 188, 278 N.W. at 399. The

supreme court has explained that "[it] is the actual or medical or pathological condition of the worker . . . that is controlling . . . .. [R]ecovery [is possible] in occupational disease cases whe[ther or not] actual loss of wages is involved." *Kohler*, 42 Wis. 2d at 403–405, 167 N.W.2d at 434–35.

■

We agree with the commission's statement in this case that whether an employee is reimbursed for lost time is irrelevant because "[w]hile an employe may be able to make up for this lost work through the use of sick leave, vacation time, or flexibility of schedule, the fact remains that work time and wages have been lost, even though the wages may subsequently be recompensed."[5]

*By the Court.*—Order affirmed.

---

[5]*See also General Accident Fire & Life Assur. Corp v. Indus. Comm'n,* 221 Wis. 544, 546, 266 N.W. 226, 227 (1936) (the employer made a gift to the employee of the amount of wages legally lost, but that does not obviate the reasons for that loss), and progeny.

Indeed, General Casualty's insistence that Schrock can only be found disabled if he sustained wage loss would mean that his disability would turn on the wholly fortuitous circumstance that he visited the doctor during work hours, rather than at some other time. We agree with the supreme court's comment in *Wisconsin Granite Co. v. Indus. Comm'n,* 208 Wis. 270, 274, 242 N.W. 191, 192 (1932), that:

> [I]f in order to award compensation for occupational disease the employee must be performing service [for his employer] at the very moment that disability occurs . . ., then in many instances occupational disease [would] go uncompensated under our statutes. It [would] mean[ ] that if an employee is stricken in the nighttime, on Sunday, or on a holiday, . . . he [would not be] entitled to compensation for occupational disease. Plainly such a situation is utterly repugnant to the manifest purpose of the legislature . . ..

GARTZKE, P.J. *(concurring).* I agree with the result, but I note that Sharon Plumbing's liability and that of its insurer turn on a fortuitous circumstance: that Schrock saw a doctor during working hours on a workday rather than after hours or on a weekend. This follows from the cases relied upon by LIRC: *Wagner v. Industrial Comm'n.,* 273 Wis. 553, 79 N.W.2d 264 (1956), *modified,* 273 Wis. 567a, 80 N.W.2d 456 (1957) and *Royal-Globe Ins. Co. v. DILHR,* 82 Wis. 2d 90, 93, 260 N.W.2d 670, 672 (1978) (per curiam). The *Royal-Globe* court said:

> While sec. 102.01(2) provided that in case of occupational disease the date of injury is the last day of work for the last employer whose employment caused disability, such provision applies *only* when the wage loss occurs after the termination of employment, and, *where there is wage loss from the occupational disease before the termination of employment, the date of the commencement of such wage loss establishes the date of injury.* (Quoting from *Wagner,* 273 Wis. at 561, 79 N.W.2d at 268) (emphasis added).

According to LIRC, it has consistently interpreted "wage loss" to include lost time from work, even if later recompensed, because disability occurs when the symptoms of the occupational disease result in lost work time. I agree with that interpretation.

However, it is poor policy to make the right of an employee for worker's compensation from a particular employer dependent upon so flimsy a basis as seeing a doctor on company time rather than the employee's time. Luck was on Schrock's side. Luck may not be on the next employee's side.