UNITED PARCEL SERVICE, INC., d/b/a United Parcel Oshkosh, and Liberty Mutual Insurance Company, Plaintiffs-Appellants, †

v.

James LUST and Labor & Industry Review Commission, Defendants-Respondents.

Court of Appeals

*No. 96–0137. Submitted on briefs December 6, 1996.—Decided January 29, 1997.*

(Also reported in 560 N.W.2d 301.)

†Petition to review held in abeyance.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas W. Bertz*, of *Anderson, Shannon, O'Brien, Rice & Bertz* of Stevens Point.

On behalf of the defendant-respondent, James Lust, the cause was submitted on the brief of *Anthony J. Utschig*, of *Bollenbeck, Rowland, Utschig & Fyfe, S.C.* of Appleton.

On behalf of the defendant-appellant, LIRC, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Monica Burkert-Brist*, assistant attorney general.

Before Brown, Nettesheim and Anderson, JJ.

NETTESHEIM, J.   United Parcel Service, Inc. (UPS) appeals from a circuit court order which affirmed a Labor and Industry Review Commission (LIRC) decision awarding workers' compensation benefits to James Lust for physical injury aggravated by job-related stress.[1] On appeal, UPS argues that: (1) LIRC exceeded its statutory authority by awarding benefits on a basis not raised in the prior proceedings before the administrative law judge (ALJ), (2) LIRC erred by failing to apply the "unusual stress" test to Lust's claims of physical injury, and (3) LIRC's decision is not supported by the evidence. We reject UPS's arguments and affirm the circuit court order.

## FACTS

Lust was employed as a delivery driver by UPS from 1965 to August 1990. For eighteen of those years, Lust served as a union steward. Between 1984 and 1987, Lust experienced job-related mental stress. However, it was not until 1987 that Lust began to experience symptoms of this mental stress. These symptoms included weight loss, nightmares, nervousness and shaking. Lust believed his problems were the product of extraordinary stress caused by the conditions of his employment and, particularly, the intimidating behavior of his new supervisor, John

---

[1] UPS's workers' compensation insurer, Liberty Mutual Insurance Company, is a coappellant.

Messler. In March 1988, Lust was hospitalized for depression, anxiety and related conditions.

Assisted by medication, Lust returned to work in June 1988. However, a year later, in June 1989, he was hospitalized for Ramsay-Hunt syndrome (also referred to as "cephalic herpes zoster"), a condition which causes a deterioration of the brainstem. In the summer of 1990, Lust again returned to work but not as a delivery driver. Instead, he performed truck washing and vehicle maintenance duties. However, in August 1990, Lust was again unable to work and has not worked since.

Subsequently, Lust filed a workers' compensation claim. His Application for Hearing alleged that his injuries included "Mental and emotional distress; depression; Herpes Zoster." At the hearing, Lust produced evidence in support of both his claimed mental injury and his Ramsay-Hunt syndrome physical condition. The ALJ concluded that Lust had failed to prove that he was subjected to "unusual stress" in the workplace and therefore dismissed Lust's claim for mental injury. However, the ALJ did not address the evidence of Lust's physical injury.

Lust obtained LIRC review of the ALJ's decision. LIRC agreed with the ALJ that Lust had not established a compensable mental injury. However, LIRC did award Lust compensation for his physical injury based on Lust's Ramsay-Hunt syndrome condition.

UPS then obtained circuit court review of the LIRC decision. The circuit court affirmed LIRC's decision. UPS appeals to us. We will recite additional facts as required by our discussion of the issues.

## *DISCUSSION*

### *1. LIRC's Statutory Authority*

On a threshold basis, UPS contends that LIRC did not have authority under § 102.18(3), STATS., to award Lust compensation for his physical injury because that claim was not decided by the ALJ and was not raised by Lust in his petition for review to LIRC. The statute governs findings, orders and awards made in workers' compensation hearings. Subsection (3) allows for review of the ALJ's decision by LIRC. It provides, in relevant part: "The commission shall either affirm, reverse, set aside or modify the findings or order in whole or in part, or direct the taking of additional evidence. This action shall be based on a review of the evidence submitted." Section 102.18(3), STATS.

It is not entirely clear from the record of the proceedings before the ALJ whether Lust gave the same prominence to his physical injury as he did to his mental injury. However, as we have noted, Lust's initial Application for Hearing did list his Ramsay-Hunt syndrome among the injuries which he had sustained.[2] In addition, Lust presented evidence of his Ramsay-Hunt syndrome at the hearing before the ALJ.

The ALJ's decision discussed Lust's claim of mental injury, ultimately rejecting that claim because Lust had failed to establish that the mental injury was the result of "unusual stress" in the workplace. However, the ALJ did not address the evidence relating to Lust's physical injury. On further review, LIRC reviewed the entire record, consulted with the

---

[2] Actually, Lust's Application for Hearing referred to the Ramsey-Hunt syndrome by its alternative label, cephalic herpes zoster, which Lust recited as "herpes zoster."

ALJ, and then issued a decision addressing the evidence pertaining to both categories of Lust's alleged injuries. Although LIRC agreed with the ALJ that Lust had failed to meet his burden regarding his claim for mental injury, LIRC awarded Lust benefits on the basis of his physical injury.

In support of its argument that LIRC exceeded its authority under § 102.18(3), STATS., by addressing a theory of recovery not addressed by the ALJ, UPS relies on *Joseph Schlitz Brewing Co. v. DILHR*, 67 Wis. 2d 185, 226 N.W.2d 492 (1975). There, the department had awarded worker's compensation death benefits on a theory not raised by the claimant. *See id.* at 189-90, 226 N.W.2d at 494. After concluding that the department had erred both in its legal conclusions and by failing to make sufficient factual findings, *see id.* at 191-92, 226 N.W.2d at 495, the supreme court held that the department should have reopened the proceedings to permit the parties to present evidence regarding the basis upon which the department had awarded benefits. *See id.* at 193, 226 N.W.2d 496.

UPS argues that the same impropriety occurred here. We disagree. It was not the department's procedure which triggered the reversal in *Joseph Schlitz*. Rather, it was the department's error of law and its concomitant failure to make sufficient findings which necessitated the reversal. *See id.* at 191-92, 226 N.W.2d at 495. Only then, in the context of discussing the appropriate appellate relief, did the supreme court turn to the question of whether the department's procedure was proper. *See id.* at 193, 226 N.W.2d at 496. Importantly, in the course of that discussion, the supreme court did not hold that the department could not award benefits on a different theory than that used by the examiner. Rather, the court held that if the

department did so, it was first required, under the facts of that case, to reopen the proceedings to allow the parties to address the new issue introduced into the proceedings by the department. *See id.*

Unlike *Joseph Schlitz*, here, as our ensuing discussion will reveal, LIRC committed no legal or factual errors. Moreover, as we have indicated above, Lust's application for a hearing listed his Ramsay-Hunt syndrome physical condition among his injuries, and his evidence at the hearing established this condition. Thus, the evidence relied upon by LIRC was already in the record. Obviously, Lust's allegation of his physical injury and his evidence in support thereof were not presented in a vacuum. Even though Lust may not have emphasized his physical condition as strongly as his claimed mental injuries, a fair reading of the entire record reasonably alerted UPS that Lust's claim for compensation was linked to his physical condition as well as his mental injuries. Thus, when Lust sought LIRC review, it was reasonable to assume that LIRC would look to the entire evidentiary record which had already been constructed before the ALJ.

Thus, unlike *Joseph Schlitz*, we do not see this as a case where UPS has been blindsided by the LIRC action. LIRC, not the ALJ, bears the ultimate responsibility for finding facts. *See Falke v. Industrial Comm'n*, 17 Wis. 2d 289, 294-95, 116 N.W.2d 125, 128 (1962); *see also* § 102.18(3), STATS. The position taken by the parties at the administrative proceedings does not control the agency's ultimate resolution of the case. *See Miller Brewing Co. v. LIRC*, 173 Wis. 2d 700, 719, 495 N.W.2d 660, 667 (1993). LIRC has the duty to "find the facts and determine the compensation irrespective

of the presentation of the case by the attorneys." *Id.* at 719-20, 495 N.W.2d at 667 (quoted source omitted).

We conclude that LIRC did not exceed its authority in considering Lust's claim on the basis of his physical injury.

### *2. "Unusual Stress" Test*

UPS next argues that LIRC erred by failing to apply the "unusual stress" test to Lust's claim of physical injury.

Workers' compensation benefits are governed by Ch. 102, STATS. In order to qualify for benefits, the claimant must satisfy § 102.03(1), STATS., which requires in part that "the employee sustain[ ] an injury" and that "the accident or disease causing injury arises out of the employee's employment." *See* § 102.03(1)(a), (e). Section 102.01(2)(c), STATS., defines "injury" as "mental or physical harm to an employee caused by accident or disease . . . ." Ordinarily, we accord great weight to a LIRC determination because that agency has the experience, competence and specialized knowledge regarding the Workers' Compensation Act. *See GTC Auto Parts v. LIRC*, 184 Wis. 2d 450, 460, 516 N.W.2d 393, 397 (1994).

Here, however, the appellate issue is whether the "unusual stress" test applies to a case in which emotional stress in the workplace aggravates an existing physical condition. UPS says it does, citing to the case law applying the "unusual stress" test. *See School Dist. No. 1 v. DILHR*, 62 Wis. 2d 370, 377-78, 215 N.W.2d 373, 377 (1974). Lust says it does not, contending that all he need show under conventional workers' compensation law is that his work activity

(whether unusual or not) aggravated or accelerated beyond normal progression his progressively deteriorating or degenerative Ramsay-Hunt syndrome condition. *See Lewellyn v. DILHR*, 38 Wis. 2d 43, 59, 155 N.W.2d 678, 687 (1968). The parties' competing positions require that we decide whether LIRC correctly applied the law. That question presents an issue of law which we review without deference to LIRC. *See GTC Auto Parts*, 184 Wis. 2d at 460, 516 N.W.2d at 397-98. We therefore conclude that we owe no deference to LIRC on the issue before us.[3]

LIRC awarded Lust compensation based on its finding that Lust's employment precipitated, aggravated and accelerated his Ramsay-Hunt condition beyond its normal degenerative condition. UPS contends that LIRC acted contrary to law by failing to apply the "unusual stress" test to Lust's claim of physical injury. Essentially, UPS argues that physical injuries resulting from emotional stress must result from "unusual stress" in the workplace in order to be compensable.

We begin by noting the standard for compensation in the conventional workers' compensation case as set forth in *Lewellyn*. There, the supreme court identified three factual situations which should determine which injuries are recoverable:

---

[3] We also observe that the parties cite to no case law which demonstrates that LIRC has, prior to this case, addressed a similar situation: mental stress which aggravates an existing physical condition. In such a situation, we owe no deference to the agency since its expertise and experience, at least as of this writing, is no greater than ours. *See Jicha v. DILHR*, 169 Wis. 2d 284, 291, 485 N.W.2d 256, 259 (1992).

(1)   If there is a definite "breakage" . . . while the employee is engaged in usual or normal activity on the job, and there is a relationship between the breakage and the effort exerted or motion involved, the injury is compensable regardless of whether or not the employee's condition was preexisting and regardless of whether or not there is evidence of prior trouble.

(2)   If the employee is engaged in normal exertive activity but there is no definite "breakage" or demonstrable physical change occurring at that time but only a manifestation of a definitely preexisting condition of a progressively deteriorating nature, recovery should be denied even if the manifestation or symptomatization of the condition became apparent during normal employment activity.

(3)   If the work activity precipitates, aggravates and accelerates beyond normal progression, a progressively deteriorating or degenerative condition, it is an accident causing injury or disease and the employee should recover even if there is no definite "breakage."

*Lewellyn,* 38 Wis. 2d at 58-59, 155 N.W.2d at 686-87 (citations and footnotes omitted). *Lewellyn,* however, did not distinguish between claims of mental and physical injury[4] and did not require that the work activity be unusually stressful.

---

[4] We note that subsequent to *School Dist. No. 1 v. DILHR,* 62 Wis. 2d 370, 215 N.W.2d 373 (1974), the supreme court discusses the rule set out in *Lewellyn v. DILHR,* 38 Wis. 2d 43, 155 N.W.2d 678 (1968), in relation to claims of mental injury. *See Swiss Colony, Inc. v. DILHR,* 72 Wis. 2d 46, 54-55, 240 N.W.2d 128, 132 (1976). In *Swiss Colony,* the court found that the *Lewellyn* rule was "inapplicable to [that] particular case of mental injury" because it was "not a case where there [was] a

██ This question arose in *School Dist. No. 1 v. DILHR*, 62 Wis. 2d 370, 215 N.W.2d 373 (1974). There, the supreme court considered whether the same elements and level of proof applied to claims of mental injury. Because claims of mental injury resulting from mental stress are inherently difficult to disprove, the court adopted the "unusual stress" test which requires that "mental injury nontraumatically caused must have resulted from a situation of greater dimensions than the day-to-day emotional strain and tension which all employees must experience." *Id.* at 377-78, 215 N.W.2d at 377.

UPS urges this court to apply the "unusual stress" test adopted in *School Dist. No. 1* to Lust's claim for physical injury. UPS contends that *School Dist. No. 1* and its progenies, *Swiss Colony, Inc. v. DILHR*; 72 Wis. 2d 46, 240 N.W.2d 128 (1976); *Probst v. LIRC,* 153 Wis. 2d 185, 450 N.W.2d 478 (Ct. App. 1989); and *Jenson v. Employers Mut. Cas. Co.*, 161 Wis. 2d 253, 468 N.W.2d 1 (1991), presented similar claims of physical injury resulting from mental stress.

We disagree with UPS. The physical symptoms in those cases (i.e., insomnia, anorexia, anxiety, headaches) originated from, and were produced by, the

history or evidence of prior mental or mental-physical disabilities later aggravated by work stresses." *Swiss Colony*, 72 Wis. 2d at 54-55, 240 N.W.2d at 132. However, the court went on to find that the circuit court incorrectly failed to apply the recently adopted "unusual stress" test to a claim of nontraumatically caused mental injury stating that "[t]he policy of caution and carefulness announced in [ *School Dist. No. 1*] would be frustrated if these guidelines were abandoned and the standards for physical injuries applied . . . ." *Id.* at 55, 240 N.W.2d at 132.

emotional stress.[5] Lust's claim, however, was based on his *already existing and progressively deteriorating* Ramsay-Hunt syndrome. While the emotional stress in the workplace aggravated or accelerated that condition, it did not produce it. In a situation involving a definable physical injury, the skepticism which the law harbors about mental injuries (and which produced the "unusual stress" test) is not as great.

We therefore hold that the elements of proof placed on a claimant alleging a definable physical injury as a result of emotional stress in the workplace are governed by the conventional standard set out in *Lewellyn*. That standard requires that the *"work activity"* precipitate, aggravate or accelerate beyond normal progression a progressively deteriorating or degenerative condition. *See Lewellyn*, 38 Wis. 2d at 59, 155 N.W.2d at 687. (Emphasis added.) This standard does not require that the work activity involve "unusual stress."[6]

This court recently clarified the distinction between physical symptomatology of an emotional

[5] Lust also experienced these kinds of symptoms. However, his award was not based on these problems.

[6] In *Lewellyn*, 38 Wis. 2d at 59, 155 N.W.2d at 687, the supreme court denied compensation to the claimant not because she had failed to prove "unusual stress"—though she was allegedly injured while turning and lifting an object weighing only five pounds thirteen ounces—but rather because there was "sufficient credible evidence that the work incident did not aggravate beyond normal progression [the claimant's] degenerative condition." The court did not inquire into whether the claimant was subjected to "unusual stress." The *Lewellyn* rule requires only that the claimant establish a causal link between the employment and the injury, not that he or she was subjected to "unusual stress."

318

injury and an actual physical injury resulting from stress in the workplace. In doing so, we determined that claims of physical injury based on the physical symptomatology of mental injury are subject to the "unusual stress" test; however, claims of physical injury are not. *See Milwaukee County v. LIRC*, 205 Wis. 2d 253, 556 N.W.2d 340 (Ct. App. 1996).

In *Milwaukee County*, the claimant suffered from chest pains and fainting immediately following a stressful encounter with her supervisor. Following the incident, the claimant was treated for stress producing "bodily symptoms of high blood pressure, chest pains, anxiety attacks and sleeplessness." *See id.* at 256, 556 N.W.2d at 342. The ALJ determined that the claimant was entitled to benefits because she had suffered from physical symptoms resulting from emotional stress. *See id.* The claimant was not made to prove that she was subjected to "unusual stress." The ALJ's decision was then affirmed by both LIRC and the circuit court. *See id.* The court of appeals reversed stating:

> In this case, both the administrative law judge and the Commission blurred Neal's stress-caused "nervous" injury with its physical symptoms. *Physical symptomatology is not the same as physical injury.* To read the case law in such a manner destroys the dichotomy between purely mental injuries and physical injuries.

*Id.* at 260, 556 N.W.2d at 344 (emphasis added).

Implicit in this language is the conclusion that claims of actual physical injury fall outside the reach of *School Dist. No. 1.* Because *Milwaukee County* speaks only to physical injury claims based on the physical symptomatology of mental injury, it does not bear upon this case. It does however serve to demonstrate why

UPS's reliance on *School Dist. No. 1* and its progeny is misplaced.

The court's ruling in *Milwaukee County* is in keeping with the policy underlying the "unusual stress" test. In adopting the "unusual stress" test, the *School Dist. No. 1* court explicitly identified its concern that "[w]ithout some effective means of evaluating an employee's claim of mental injury, this court would open the floodgates to numerous fraudulent claims of mental injury." *School Dist. No. 1*, 62 Wis. 2d at 377, 215 N.W.2d at 377. Therefore, the "unusual stress" test was adopted in response to the court's concern with the difficulties surrounding proof of the existence of severe emotional harm and the proof of a causal relationship between the injury and the employment. *See id.*; *see also Alsteen v. Gehl*, 21 Wis. 2d 349, 360-61, 124 N.W.2d 312, 318 (1963) (applying a precursor to the "unusual stress" test in tort claims for intentional or negligent infliction of mental injury). The possibility of fraud lessens with regard to physical injury because that diagnosis is more concrete and more easily scrutinized.

Because the evidentiary problems for which the "unusual stress" test was developed do not exist with regard to claims of physical injury, its application to such claims is unwarranted. Here, LIRC found that Lust's employment precipitated, aggravated and accelerated his progressively degenerating preexisting condition of Ramsay-Hunt syndrome. We conclude that LIRC properly considered Lust's claim under the language of *Lewellyn*.[7]

---

[7] Based on this conclusion, LIRC awarded Lust temporary total disability for the dates of hospitalization for the Ramsey-

### 3. Sufficiency of Evidence

UPS next argues that LIRC's award of benefits to Lust is not supported by the evidence.

When LIRC reverses the recommendation of an examiner or ALJ, it is the agency's finding we review, not that of the ALJ. *Burton v. DILHR*, 43 Wis. 2d 218, 222, 168 N.W.2d 196, 197 (1969). Nor do we review the circuit court's decision. *See Wisconsin Pub. Serv. Corp. v. Public Serv. Comm'n*, 156 Wis. 2d 611, 616, 457 N.W.2d 502, 504 (Ct. App. 1990). Whether an employee's injury arose out of his or her employment is a question of fact for LIRC to determine. *See General Cas. Co. v. LIRC*, 165 Wis. 2d 174, 178, 477 N.W.2d 322, 324 (Ct. App. 1991).

We will not set aside LIRC's orders or awards as long as they are supported by credible and substantial evidence. Section 102.23(6), STATS.; *see also Applied Plastics, Inc. v. LIRC*, 121 Wis. 2d 271, 276, 359 N.W.2d 168, 171 (Ct. App. 1984). "Substantial evidence is evidence that is relevant, credible, probative, and of a quantum upon which a reasonable fact finder could base a conclusion." *Cornwell Personnel Assocs., Ltd. v. LIRC*, 175 Wis. 2d 537, 544, 499 N.W.2d 705, 707 (Ct. App. 1993). Credible evidence is that which excludes speculation or conjecture. *See General Cas.*, 165 Wis. 2d at 179, 477 N.W.2d at 324. It is not our role on review to evaluate conflicting evidence to determine which should be accepted; we will affirm if there is credible evidence to support the finding regardless of whether there is evidence to support the opposite conclusion. *Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 592-94, 286 N.W.2d 540, 544-45 (1979).

---

Hunt condition and permanent partial disability of sixty-five percent compared to disability of the body as a whole.

Specifically, UPS contends that LIRC's finding that Lust's Ramsay-Hunt condition was precipitated, aggravated and accelerated beyond its normal degenerative condition is not supported by substantial and credible evidence. LIRC's decision to award Lust. workers' compensation for his physical injuries was based in part upon the medical documentation submitted by Lust. In a note dated April 14, 1993, Lust's treating physician, Dr. Robert Haight, stated that Lust had reached a healing plateau by May 14, 1991, and that he was 100% permanently disabled. Haight noted his belief that the "extreme stress which Mr. Lust was under from his employment at UPS precipitated, aggravated, and accelerated the Ramsay-Hunt syndrome." In addition, Lust's former psychiatrist, Kenneth Olson, M.D., concluded that Lust suffered from depression which was most likely related to stress in the workplace. In an August 1991 letter, Olson noted that "[t]he excessive work demands placed upon [Lust] at UPS . . . and, as well, the associated depression caused by the work probably aggravated or accelerated, if not precipitated, preexisting degenerative condition, Ramsay Hunt."

In December 1991, Lust was seen by Barbara L. Lauderdale, M.D., regarding his Ramsay-Hunt syndrome. Lauderdale concluded that Lust was indeed suffering from Ramsay-Hunt syndrome which is commonly thought to result from immunosuppression disorders, aging and stressful life events. Lauderdale believed Lust's condition to be precipitated by "stress and depression."

After Olson moved out of the area, Lust was seen by his current psychiatrist, M. Jean Seay, M.D. In April 1993, Seay submitted a comprehensive report which chronicles Lust's treatment history for

depression and Ramsay-Hunt syndrome. Seay diagnosed Lust with chronic, recurrent major depression and posttraumatic stress and concluded that "Mr. Lust has sustained a 100% permanent disability to the body as a whole with exposure to extraordinary stress at UPS being the predominant contributory causative factor of this disability."

LIRC also noted that Lauderdale's practitioner report, submitted to the Workers' Compensation Division, explicitly concludes that it is probable that the stress and depression from work "caused [Lust's] disability by precipitation, aggravation and acceleration of a preexisting progressively deteriorating or degenerative condition beyond normal progression."

Finally, LIRC acknowledges the conflicting medical reports of the Independent Medical Examiner (IME), Thomas Michlowski, M.D. After an interview with Lust in August 1991, Michlowski found that Lust showed no signs of major mental disorder. Then, in April 1993, based on Lust's medical records, Michlowski concluded that Lust was "doing fine" at the time of his hospitalization for Ramsay-Hunt syndrome and therefore his condition was not caused by extreme stress. Michlowski further concluded that Lust was "not disabled or suffering from any physical or psychiatric impairment/permanency as a result of the encountered stress."

In its written decision, LIRC states:

> Given the prior years of stressful employment, the commission is not persuaded by Dr. Michlowski's opinion that the progression of the condition was not work-related . . . . Rather the commission finds credible the opinions of Drs. Olson, Lauderdale and Haight that the applicant's disability from his

Ramsay-Hunt condition is work-related, as an aggravation, acceleration and precipitation of a progressively degenerating preexisting condition.

█

In evaluating medical testimony, LIRC is the sole judge of the weight and credibility of the witnesses. *See Manitowoc County v. DILHR*, 88 Wis. 2d 430, 437, 276 N.W.2d 755, 758 (1979). On review, we search the record to locate credible evidence which supports the department's determination. *See Vande Zande v. DILHR*, 70 Wis. 2d 1086, 1097, 236 N.W.2d 255, 260 (1975). Here, there was extensive credible evidence to support LIRC's determination that Lust suffered a physical injury.

UPS also argues that LIRC's finding that Lust was not subjected to "unusual stress" in the workplace contradicts and effectively invalidates the statements of Lust's physicians that it was "extreme stress" in the workplace which aggravated Lust's Ramsay-Hunt syndrome. We disagree.

UPS is apparently contending that the law's definition of "unusual stress" equates with medicine's definition of "extreme stress." This argument mixes apples and oranges. LIRC was speaking of Lust's claim for mental injury and the level of stress necessary to legally sustain that claim. Lust's physician was speaking of Lust's claim for physical injury and what he medically saw as causing that injury.

Therefore, LIRC's holding that Lust had not established "unusual stress" necessary to legally establish his claim for mental injury did not mean that LIRC was *a fortiori* required to reject Lust's claim for physical injury. As we have already held, under the *Lewellyn* test, Lust was simply required to show that his work activity (whether conducted under conditions

324

of extreme stress or otherwise) aggravated his preexisting physical condition. Thus, a failure to establish "unusual stress" does not preclude a finding that conditions in the workplace, such as "extreme stress," precipitated, aggravated and accelerated a progressively degenerating preexisting condition. In this case, LIRC found that Lust had a preexisting condition which was aggravated and accelerated by significant work-related stress. We conclude that there was substantial and credible evidence in the record to support LIRC's conclusion.

Finally, we address LIRC's finding as to the working conditions at UPS. Not only did Lust testify to the stressful conditions, but numerous witnesses also so testified. The drivers are required to adhere to strict time standards, and the company imposes a variety of time-saving measures. For example, drivers must walk to the truck with keys ready and write while walking. Lust's supervisor, John Messler testified that he rode with Lust at least six times between March 1987 and January 1988. This number is unusually high and all witnesses agreed that being accompanied by a supervisor is a stressful encounter.

Messler testified that he treated Lust in a professional manner but that Lust's performance was below standard and was not improving. However, John Shields, a former supervisor, testified that Lust was a "favorite target" of Messler's. Shields also testified that Messler enjoyed rattling Lust and bragged about it to other supervisors. Finally, Jan Meyer, a former driver and supervisor, testified that he quit his job at UPS because of the stress. Meyer believed that the drivers' time standards were set "to a young man's standards who is physically fit" and that working as a UPS driver

was "very stressful." Meyer testified that he had been intimidated by supervisors when he was a route driver.

LIRC found the testimony of Meyer to be "especially credible" on the issue of stress. Since this issue turned on the credibility of the witnesses, LIRC consulted with the administrative law judge before making the following findings on this issue:

> [W]hile the applicant has established his job was stressful, he did not establish a greater dimension of stress than the emotional strain and tension which similarly-situated employes experienced daily without mental injury. The employer clearly placed stress on its workers . . . . However, such stress was nearly universal at the employer's work place. The applicant, like all of the employer's workers, experienced significant work-related stress . . . .

LIRC's findings make clear that Lust was indeed subjected to a great deal of stress. However, its conclusion that all UPS employees experience the same amount of stress necessarily precluded Lust from recovering for his claimed mental injury under *School Dist. No. 1*. Nonetheless, LIRC found that Lust's claim for physical injury, namely the aggravation of his Ramsay-Hunt syndrome, was supported by medical opinion and its findings of stress in the workplace.

█

Based on our own review of the record, we conclude that there was substantial and credible evidence presented which established both that Lust suffered from a physical injury aggravated by work-related stress and that a significant amount of stress did in fact exist in Lust's workplace.

## CONCLUSION

We conclude that LIRC did not exceed its statutory authority by awarding benefits to Lust for his physical injury. We conclude that LIRC properly rejected the "unusual test" standard in assessing Lust's claim for physical injury. Finally, we conclude that the LIRC award is supported by the evidence.

*By the Court.*—Order affirmed.